GEORGE R. HORTON and wife v. JUDSON LEE.

*Will—Election—Parol Evidence.*

Devise of "the tract of land whereon I now live" to testator's wife for life, then over to a daughter. Certain crops raised on the "tract" were also given to the wife. The tract on which the testator lived embraced 59 acres (the subject of the suit) which descended to the wife from her father's estate:

*Held*, the presumption that the testator did not intend to include the 59 acres in the devise to the wife may be rebutted, and parol evidence is competent to show what was in fact included in the "tract" whereon he lived.

*Held further*, where in such case the evidence tended to show that the wife elected to take the property devised, knowing that the 59 acres were included in the "tract," and occupied the premises, until her death, without dissenting from the testator's will, then no one claiming under her can set up any claim that would defeat the will. An election once made, though by matter *in pais*, is binding.

CIVIL ACTION, tried before *Merrimon, J.*, at August Term, 1887, of WAKE Superior Court, for the recovery of land and damages for its detention.

The material facts are as follows:

Wm. Lee died in the County of Wake, in 1861, leaving a last will and testament, which was duly proved at the August Term, 1861, of Wake County Court, and which among other things contains the following:

"Item 1. I lend to my beloved wife the tract of land whereon I now live during the term of her natural life.

"Item 2. I lend to my beloved wife a certain tract of land adjoining William A. Rhodes, known as the Herndon place, during the term of her natural life.

"Item 4. I give and devise to my beloved wife all my household and kitchen furniture, and the corn made on the tract of land whereon I now live and on the Herndon place.

"Item 6. I give and bequeath to my youngest daughter, Sarah, the tract of land whereon I now live and my negro man named Squire, after the death of her mother."

It was admitted that Mrs. Martha Lee died on the _____ day of January, 1887; that Sarah Horton, the plaintiff, was the youngest daughter of William Lee and the person mentioned in the 6th item of said will.

It was admitted that the widow of Wm. Lee took possession of the tracts of land devised to her in said will, and used and occupied them until her death, and did not dissent from the will.

It was admitted that while the complaint sought the recovery of the whole tract of some 180 acres, yet that, since the bringing of said action, possession of the tract had been given the plaintiffs, with the exception of the 59 acres described in the answer, and that said 59 acres were alone in controversy.

It was further admitted that the 59 acres, spoken of in the answer, was inherited by Mrs. William Lee from her father.

At this stage of the trial the plaintiffs offered to show by witnesses that the words used by Wm. Lee in the 1st and 6th items of his will, to-wit: "the tract of land on which I now live," included the 59 acres hereinbefore referred to as having been inherited by Mrs. Lee from her father, and now in controversy.

After the will was offered and read the Court said that, as it was admitted that at the time the will was executed Martha Lee was the owner of the 59 acres in controversy, the same having been set apart to her in partition proceedings as her share of her father's real estate, it would be presumed that the testator did not intend to embrace the said 59 acres in his devise to his wife, but only his own land.

Plaintiffs' counsel excepted.

The counsel for the defendant objected to the reception of such other evidence, but the Court permitted it to be offered, and it was as follows:

"W. A. B. Richardson testified, that he knew the tract of land on which Wm. Lee lived at the time of his death, since 1853 or '54; been over the entire tract, of between 100 and 200 acres; when first knew it, was like great many other old plantations; don't know where the particular 59 acres are; the entire tract was cultivated as one; no distinction or separation in it; the tract was known as Wm. Lee's tract of land, and the one on which he lived at his death; Lee had a good many other tracts—one known as the Herndon place; another on the other side of Little River; never heard Wm. Lee speak of it. * * * The 59 acres is part of the David Bunch land; the mother of the plaintiff Sarah and the defendant inherited it from her father, David Bunch; that Wm. Lee, who married Martha Bunch, bought of her brother and sisters their interests in their father David Bunch's land after partition, and those interests thus bought, together with Martha's 59 acres, constituted one tract since Wm. Lee married Martha, and that was the one on which Wm. Lee lived at the time of his death.

" Wm. Underhill testified, that he knew the land well; is 75 years old; the place Wm. Lee lived on was known as the Bunch place or aunt Polly's place; never heard it called anything else; since it got out of Bunch it has been called the Lee place; the 59 acres in controversy and the interests bought by Wm. Lee from the Bunch heirs are adjoining— one tract; Lee lived on the place he got from the Bunch heirs. * * * Wm. Lee and Miss Martha Bunch, who are father and mother of Sarah Horton and defendant, were married before 1831, and had children before 1848.

" Report of the commissioners partitioning the David Bunch land was introduced, which showed that the part inherited by Martha was allotted to her husband, Wm. Lee,

although plaintiffs admit that the legal title, by virtue of the partition, was in Mrs. Martha Lee at the time Wm. Lee made his will.

" W. A. B. Richardson, re-called, says, that the defendant last fall admitted to him that his father, Wm. Lee, gave in the tract for taxation, as a whole, including the 59 acres.

" Gideon Liles testified, that he was 58 years old ; lived always about one-fourth mile from land in controversy ; knew it well; Wm. Lee cultivated it all together, under one farm—the whole plantation; it was all called Wm. Lee's home; it was all together as one plantation.

" W. A. B. Richardson, re-called, testified, that Mrs. Martha Lee, widow of Wm. Lee, died in January, 1887 ; have heard Mrs. Martha Lee say several times the land was hers and she intended it for her daughter Sallie—meaning the plaintiff; that her husband had willed it to her for life, and after that to his daughter Sallie; witness always thought she meant the whole land, but she made no definition and no distinction ; she said it was her land.

"Thadeus Lee, brother of plaintiff and defendant, testified, that he heard his mother, Martha Lee, say all of the tract was her land, and at her death it went to Sallie; father cultivated the land all together in his lifetime.

" Geo. R. Horton testified, that in all the land willed to Mrs. Martha Lee by Wm. Lee, there were some 300 acres out of 500 acres.

"Defendant objected, specially to the testimony of W. A. B. Richardson and Thad. Lee as to declarations of Martha Lee, set out above.

" The following issue was submitted to the jury:

"Are the plaintiffs the owners and entitled to the possession of fifty-nine acres of land described in the answer of the defendant ?

" The Court instructed the jury that if they believed the testimony and admissions of the parties, the plaintiff was

not entitled to recover, and directed the issue to be answered in the negative.   There was a verdict for defendant, under the Court's direction, and judgment accordingly..

The plaintiffs excepted to the charge of the Court, and appealed from the judgment rendered.

*Messrs. Fuller & Snow*, for the plaintiffs.
*Messrs. Battle & Mordecai*, for the defendant.

DAVIS, J., (after stating the case).   Whatever was embraced in the first clause of the will of William Lee passed under the sixth clause to the plaintiff after the death of Martha Lee.

The plaintiff says it embraced and included the fifty-nine acres in dispute.   The defendant says, no—that as to the fifty-nine acres Martha Lee held, not under the will of Wm. Lee but under a title derived by inheritance from her father, and that she was not put to her election to take under the will or to hold by her independent title in fee.

Two questions are involved :

1st.  Was the land in controversy included in "the tract of land whereon" the testator resided and embraced in the first and sixth clauses of his will?

2d.  If so, did Martha Lee accept the devises to her with a knowledge of the fact that it was so included?

1. There is no ambiguity upon the face of the will.   The testator devised "the tract of land whereon" he resided. The area and extent of that tract and what was included therein, are questions of fact.   Did it include the fifty-nine acres?   Did the testator intend to include the fifty-nine acres?   It is true, as was said in *Isler* v. *Isler*, 88 N. C., 581, "that there is a *prima facie* presumption always that a testator means only to dispose of what is his own, and what he has a right to give; and if it be at all doubtful by the terms of his will, whether he had in fact a purpose to dispose of property really belonging to another, that doubt will

govern the Courts, so that the true owner, even though he should derive other benefits under the will, will not be driven to make an election. But if, on the other hand, there should be a manifest purpose expressed in the will to dispose of the thing itself, then it is wholly immaterial whether he should recognize it or not as belonging to another, or whether he shall believe that the title and right to dispose of it vested in himself or not."

It is the clearly expressed purpose of the testator that the plaintiff should have "the tract of land whereon" he resided, after the death of her mother, but when it appeared that the land in dispute was inherited by the devisee Martha from her father, "it would be presumed," as was said by his Honor, "that the testator did not intend to include the fifty-nine acres in the devise to his wife, but only his own land;" but this presumption may be rebutted, and parol evidence is competent to fit the thing to the description and show what was in fact included in the tract. *Stowe* v. *Davis*, 10 Ired., 431; 1st Greenleaf, § 288; *Dodson* v. *Green*, 4 Dev., 438; *Bolick* v. *Bolick*, 1 Ired., 244.

When there is no doubt, as here, apparent upon. the face of the will as to what was meant by the testator, but the doubt is raised by something extrinsic—that is *latent*—parol evidence is competent to show what was meant. 1 Greenleaf,. § 297; *D. & D. Institute* v. *Norwood*, Bus. Eq., 65; *Kincaid* v. *Lowe*, Phil. Eq., 41.

In *Branch* v. *Hunter*, Phil. Law, 1, evidence offered to show that a tract of land, called the "Enfield tract," embraced the land in controversy was rejected by the Court below, but on appeal was held to be error.

Light may be thrown upon the first clause by the fourth: When the testator gave to his wife, among other things, "the corn and fodder raised on the land whereon I now live," would she not have been entitled to the corn and fodder made on the entire farm cultivated as one, or would it have

been the duty of the executors to sell what was raised on the fifty-nine acres?

2. If the land in controversy was embraced in the tract on which the devisee resided, did Mrs. Lee elect to take the devises made to her with a knowledge of that fact? It is only material that she should have known the *fact* that the fifty-nine acres were included in the tract given to her for life and then to her daughter Sarah, and if, with this knowledge, she accepted the property given to her for life, then neither she, nor any one claiming under her, would be heard to assert any claim that would defeat the will of the testator. Adams Equity, § 96 and note. It is there said that "an election once made, though by matter *in pais*, is binding."

There was error in the instruction of the Court, and the plaintiff is entitled to a new trial. Error.