H. M. VICTOR v. LOUISE MILLS, J. R. WILSON AND TRAVELERS INSURANCE COMPANY.*

(Filed 29 May, 1908.)

1. **Pleadings—Act of Corporation Alleged—Directors.**

   When it is alleged in the complaint and admitted in the answer that the wrong complained of was caused by the act of the corporation, no question is presented of an excess of power exercised by the board of directors.

2. **Corporations — No Right to Insure Officers — Presumption of Powers.**

   A corporation formed for the purpose of manufacturing cotton goods has no power to insure the life of its president for its benefit and pay the premiums, in the absence of express legislative provisions therefor, and the presumption is against such power.

3. **Same—Stockholders—Injunction.**

   When it appears that a corporation engaged in manufacturing cotton goods has taken out and carried insurance on the life of its president for its benefit, on account of the peculiar value of his services, and his relationship with the company has ceased, a stockholder may enjoin the further payment by the corporation of premiums on the policy.

ACTION heard upon pleadings by *Moore, J.,* at March Term, 1908, of MECKLENBURG.

The plaintiff, a stockholder in the Louise Cotton Mills, a corporation chartered, organized and operating pursuant to the laws of North Carolina, seeks in this action to enjoin the board of directors and managing officers of said corporation from paying to the defendant insurance company the amount of premiums on certain insurance policies. The complaint sets out the facts relied upon for the relief demanded. The several answers of the defendants admit the material allegations and set up certain facts relevant to the controversy. Plaintiff demurs to the answer. The case was decided by his Honor upon the questions of the law thus presented by the pleadings. He overruled the demurrer, giving plaintiff time to reply. From this judgment plaintiff appealed.

*BROWN, J., did not sit upon the hearing of this case.

*F. M. Redd* and *F. M. Simmons* for plaintiff.

*Winston & Bryant* and *Tillett & Guthrie* for defendants.

CONNOR, J., after stating the facts: Eliminating all formal and irrelevant matter, we extract from the pleadings the following facts: The defendant cotton mills is, and was prior to 1 June, 1905, chartered and organized in the city of Charlotte, with a capital stock of $300,000, two-thirds of which is common and one-third preferred stock.     Plaintiff is the owner of ten shares of common stock in said corporation.     On and before said date the said corporation was, in accordance with its charter, operating a mill and machinery for the purpose of manufacturing cotton goods.     On 30 June, 1905, the defendant Wilson was, and had for several years prior thereto been, the president of said corporation, and continued so to be until he resigned, on 2 October, 1906, since which time he has had no connection with said mills.     Said Wilson was at the time of his connection with said mills "a manufacturer and financier of great capacity, skill and ability.     The services which said Wilson performed for defendant mills during the whole time he occupied the position of its president were of great and peculiar value and of great benefit and advantage to the defendant and its stockholders, including the plaintiff, and such services as could be performed by the said Wilson only.     On 30 June, 1905, the said J. P. Wilson, at the instance and request of the Louise Mills, made application for an insurance policy upon his life in the said Travelers Insurance Company for the sum of $100,000, for the benefit of the Louise Mills, under a plan of insurance known as "twenty-payment life."     Two policies, No. 157589 and No. 157590, were issued in accordance with said application, for $50,000 each, and were made payable to the executors or administrators or assigns of J. P. Wilson, and the same were immediately after their delivery assigned by him to the Louise Mills, and said Louise Mills paid the first and all subsequent premiums thereon, and the said policies are now in force, if the same are

or ever were valid insurance contracts, and the next premium for the current year will be due thereon on 7 July, 1908. The said Louise Mills has already paid upon said policies the sum of $13,926, consisting of the premiums due for the years 1905, 1906 and 1907, which were $2,321 a year on each policy. The plaintiff has made demand upon the said Louise Mills, its officers and directors that it and they cease and desist from any further payment of the funds of the corporation on account of said premiums.

The defendants, on the contrary, insist that the corporation had an insurable interest in the life of Mr. Wilson when the policy was obtained, and it being at that time and under the existing conditions a valid contract of insurance, it remains so, notwithstanding his resignation as president of the corporation.

The defendant mills denies that the payment of the premiums from the funds of the corporation is an unwarranted diversion of such funds. The plaintiff's contention and application for injunctive relief are based upon two propositions:

1. That the amounts paid for premiums is an unauthorized and improper application or diversion of the funds of the corporation.

2. That the corporation has no insurable interest in the life of the defendant Wilson; that the policy is for that reason a gambling contract and therefore invalid; that upon the death of said Wilson its payment cannot be enforced in the courts of the State.

It is alleged and admitted that it is customary for corporations to insure the lives of their officers whose services are of peculiar value and whose death would impair the value of their stock. The extent of this custom is not alleged. In the view which we take of the question involved, it is not material. If the question of the personal liability of directors, in which the *bona fides* of their conduct was material,

were involved, the general custom known to and acquiesced in by the stockholders would probably be material. We notice that the pleadings refer to the insurance and payments of premiums on the policy as the action of the corporation, and not of the board of directors. The complaint sets out the transaction as the act of the corporation, and the answer so admits it. The demurrer must be construed as admitting the allegation and to be construed most favorably to the defendants. We are, therefore, to deal with the question presented as calling into question the corporate act, and not involving any suggestion of an excess or abuse of power by the directors. There are, of course, many acts done by the board of directors which can be called into question only by the corporation in its capacity as a legal entity or by a stockholder conforming to the rule laid down in *Hawes v. Oakland,* 104 U. S., 450; *Merrimon v. Paving Co.,* 142 N. C., 539. If the act of the corporation be *ultra vires,* any one or more stockholders may by some appropriate method call it in question and, unless by having consented to or acquiesced in it he is barred, have relief. "As any stockholder may restrain the diversion of corporate funds for any purpose not embraced in the original purpose of the corporation, no majority, however large, can compel a stockholder to submit to any fundamental change in the business or objects of the company. A stockholder, by becoming such, contracts with the corporation that he will submit his interests to the direction and control of the proper officers of the company in carrying out the objects and purposes for which it was instituted; and the undertaking on the part of the company is that the objects and purposes of its institution shall not be changed without at least the unanimous consent of all the stockholders, and that no other responsibilities and hazards shall be imposed on the stockholders than those which grow out of the original undertaking. The right to restrain by injunction exists in a stockholder, though every other stockholder may favor the *ultra vires* acts."

2 Purdy's Beach on Corp., sec. 904. "And he may enjoin and set aside any acts which do not conform to these limits." 2 Cook on Stockholders, sec. 681; *Pickering v. Stephenson,* 14 L. R. (1870), 340; *Wiswal v. Turnpike Co.,* 5 N. C., 183; Womack Pr. Corp., 147. "It is no sufficient answer to the suit of a dissenting stockholder, in case of an *ultra vires* act, to say that no wrong or fraud was intended, or that it would benefit the corporation and be no injury to the stockholders. The fact is enough that it is *ultra vires.*" Purdy's Beach, sec. 905. In *Central Railroad v. Collins,* 40 Ga., 582, it is said: "We do not think the profitableness of this contract to the stockholders of the corporation has anything to do with the matter. These stockholders have a right of their pleasure to stand on their contract. If the charters do not give these companies the right to go into this new enterprise, any one stockholder has the right to object. He is not to be forced into an enterprise not included in the charter. That it will be to his interest is no excuse; that is for him to judge."

"The right of a nonassenting stockholder to equitable relief does not depend in any respect upon the profitableness or unprofitableness of the transaction. He has the legal right that the corporation shall keep within the powers granted by the charter." *Byrne v. Elec. Mfg. Co.,* 65 Conn., 336, a very able opinion by *Andrews, C. J.,* reviewing the authorities.

It is true, as held by numerous courts, including our own, that the doctrine of *ultra vires* has been very much modified in recent years, and many contracts made in the course of business, especially when executed and benefits are received or liabilities are incurred, will be upheld and enforced which were formerly declared absolutely void. *Hutchins v. Bank,* 128 N. C., 72; Womack Pr. Corp., 142. This modification of the doctrine does not involve the right of a dissenting stockholder or, in an appropriate case, the State to enjoin a threatened *ultra vires* act.

The plaintiff does not call into question the *bona fides* or the good judgment of the other stockholders.    His principal apprehension appears to be that the corporation has no insurable interest in the life of Mr. Wilson, and that the assignment will be held void or the policy itself so held.    We are of the opinion that, conceding for the sake of argument that a corporation has an insurable interest in the life of one of its officers, within the ruling of a number of the courts, and conceding, further, that such interest continues after the relation is severed, as in this case, these concessions by no means settle the question of the power of the corporation to take the assignment and pay out of the corporate funds the premiums on such policies.    What the court may decide at the death of Mr. Wilson in respect to the right of the corporation to enforce payment, or, if paid by the insurance company, the right to hold as against his personal representatives more of the proceeds than the premiums paid and interest, is uncertain.    It is true that the company and Mr. Wilson are parties to this action, but it is by no means certain that these questions are "within the issues" arising upon these pleadings.    The charter is not made a part of the pleadings, and there is no suggestion that it contains any express power to enter into this contract or expend the assets of the corporation in payment of the premiums.    In ascertaining the extent of corporate powers the court will not, without an inspection of the charter, presume that unusual and extraordinary powers are conferred. It is elementary that the charter is the only source to which the court can look to ascertain what power is conferred.    "A corporation, being the mere creation of the law, possesses only those properties which the charter of its creation either expressly or as incidental to its creation confers."    *Marshall, C. J., in Dartmouth College case*, 4 Wheaton, 518.    "An incidental power exists only for the purpose of enabling a corporation to carry out the powers expressly granted to it—that is to say, the powers necessary to accomplish the purposes of

its existence—and can in no case avail to enlarge the express powers and thereby warrant it to devote its efforts or capital to other purposes than such as its charter expressly authorizes, or to engage in collateral enterprises, not directly, but only remotely, connected with its specific corporate purposes." 10 Cyc., 1096. The complaint alleges that the defendant is a corporation, duly created, organized and existing pursuant to the laws of this State, engaged in the operation of a cotton mill in the city of Charlotte. It is therefore a manufacturing corporation, with the powers usually conferred upon and reasonably necessary to the accomplishment of the purposes of its creation, such as to erect necessary houses for the installment of machinery, warehouses for storing its property, dwellings for its officers and operatives, to buy raw or partially manufactured cotton in such condition and quantities as the demands of its business require, to employ labor, buy fuel and other things necessary or useful for its business, to sell the output of its mill, to borrow money and execute its notes, and do all such other things as are reasonably incident to the accomplishment of its corporate operations. It may, of course, insure its property against loss or damage by fire or other accidents to which it is subject. It is not easy to enumerate the implied powers which attach to a corporation of this kind, and it would throw no light on the question involved in this appeal to attempt to do so. The learning and industry of counsel—and we have none at this bar who excel them—have failed to direct our attention to any case "in point." It is difficult to see where the power is to be found by implication. If the power to insure the lives of its presidents or to have them insure their lives, and immediately, as a part and in furtherance of the arrangement with the presidents, transfer the policy, the corporation paying each premium, is to be found in the charter as incident to the express powers, we should find it difficult to fix any limit in respect to other officers or employees or the amount of the insurance carried. If the

power is found by implication in the charter of a cotton mill, why would it not be equally so in any and every business, manufacturing or moneyed corporation? If the power is given, its exercise cannot be controlled by the Court. It is said, and the authorities are to the effect, that life insurance is not a contract of indemnity, but a promise, upon certain conditions being performed, to pay an amount either certain or capable of being made so. The New York and some other courts hold that an insurance policy payable to the personal representatives of the insured is a chose in action, assignable as a promissory note or bill of exchange, without any regard to an insurable interest in the assignee. Taking this view of it, in what respect, so far as the power is concerned, does this case differ from the annual purchase by the corporation of a note or bond from Mr. Wilson with the assets of the company? The power to insure the property against "loss or damage" by fire or tornadoes or other dangers usually the subject of insurance is based upon the power and duty of the directors to resort to the usual methods to protect and indemnify the company against such accidents. It is in accordance with the universal custom of prudent business management. We do not think that the insurance of the lives, certainly extending beyond the term of office or employment of its officers or employees, comes within the principle of implied or incidental powers. While it is not necessary to indulge in suggestions of undesirable or injurious results more or less likely to flow from the course pursued by the defendant, it requires no very acute prevision to see how easily the power may be unwisely exercised. It affords a temptation to depart from sound, safe methods of operating the affairs of the corporation and launch into speculation based upon anticipated large returns, hastened by the age, condition of health, etc., of the officers. Again, it is a temptation to acquire interest in and ultimate control of the insurance company and the investment of its surplus, all of which have been demonstrated to be unsafe and unsound

corporate business methods. The stockholders, instead of receiving fair, reasonable dividends on their investments, find the earnings expended in carrying insurance policies on the lives of men long since retired from any connection with the corporation. The argument that the lives of officers who have special peculiar capacity or business relation are valuable to the corporation is persuasive in support of the power to insure their lives during their term of office, but loses its force when urged as the basis for finding the incidental power when the relation has ceased to exist.

We appreciate the elusive elasticity of the term "public policy" and the difficulty of restricting its application to particular cases. But we cannot fail to see the dangerous results following a loose construction of corporate powers. Corporations are essential and useful agencies for the promotion of industries, the development of the resources of the country, the carrying on of the great enterprises of modern life. Their usefulness is largely dependent upon a close adherence to the purposes of their creation and operating within their fixed, chartered channels. It is impossible to fail to recognize the truth that in their management there is an absence of that sense of personal responsibility which is the safeguard to private business enterprises. Conceding in the largest degree absolute good faith and equally good judgment on the part of the managing officers of this corporation, we must decide the question presented upon general principles which time and experience have established as sound policy. If every business, manufacturing or moneyed corporation in this State, with equally good faith and equally good judgment, were to adopt the policy pursued in this case, it would not require any considerable sagacity or foresight to see the consequence liable to follow. There are few investments of more uncertain value than a life insurance policy, as there is nothing more uncertain, as we are taught both in the Scriptures and by experience, than the period of a given human life. The

safety of insurance companies consists in the average length of life among thousands of persons. This would be of but little avail to the corporations. The desire to eliminate the possibility of loss by the death of the president during his term is to be commended, but the necessity for paying out large sums after his life has ceased to have any possible relation to the welfare of the company, with all of the uncertainty attendant upon the cost and ultimate result, requires an investment out of all proportion to the purpose in view in making the original contract. Without passing upon the question of insurable interest, which is not very clearly involved as the matters now stand, we conclude that the complaint and answer do not disclose any power, either express or implied, enabling the cotton mills to enter into or continue to pay out the assets of the company upon the contract. It is not one of the incidental powers vesting in a manufacturing corporation.

We have given the other question which was strongly urged upon our attention a careful examination. The authorities in other States are not uniform in regard to relationships which give to one person an insurable interest in the life of another. In a well-considered opinion by *Fish, C. J.,* in *Rylander v. Allen,* 125 Ga., 206, the decisions in the different States are classified and reviewed. He places North Carolina with those States holding that an insurable interest is essential to the validity of an assignment of a life policy, and says that the majority of the courts hold otherwise, citing cases sustaining the statement. While we have examined a number of the authorities cited in the exhaustive briefs filed by counsel, we think it wise to adhere to what has been held by this Court in *Trinity College v. Insurance Co.,* 113 N. C., 244; *Hinton v. Insurance Co.,* 135 N. C., 314. We do not find any case in which the exact question presented upon this appeal is decided. In *Warnock v. Davis,* 104 U. S., 775, the policy was taken upon the life of the insured, payable to himself and assigned to the Scioto Trust Association, pursu-

ant to an agreement that the trust company would pay all of the premiums and receive nine-tenths of the proceeds upon the death of the insured. The insurance company paid the amount to Davis, representing the company. The suit was brought by the personal representative of the insured for the recovery of the amount of the policy. The court held that, as the trust company had no insurable interest in the life of the insured, the assignment was invalid, and plaintiff received the amount, less the premiums and interest. The learned Justice writing the opinion notes and rejects the doctrine of the New York Court. We note the language of *Parker, C. J.,* in *Steinback v. Diepenbrock,* 158 N. Y., 24, referring to the *Warnock case.* He calls attention to the fact that the Court treated the transaction upon its face as a wagering contract: "In the opinion it is said that the assignment of a policy to one not having an insurable interest is as objectionable as the taking out of a policy in his name. The remark was clearly true, as applied to the facts in that case, for the policy was taken out in pursuance of an agreement to assign it. It was, therefore, in fact a policy taken out for the benefit of parties having no insurable interest, although in form issued to the assured and by him assigned to said parties. In such case the court will always declare the fact to be as it is, without regard to the effort of the parties to hide the truth and cheat the law." He further says that the real difference between the courts holding the two views is not one so much of principle as it is whether the question is one of law or of fact. "In this case the policy was five years old, the cash surrender value was $485, and, being pressed for money, the insured sold it for $600. It will be found upon examining the facts in the cases that there is much contrariety of opinion, after passing well-defined relationships, in respect to what is an insurable interest. In many cases the question has arisen after the death of the insured in controversies between his personal representatives and the assignee. In other cases the company has

raised the question. The courts indicate a desire to effectuate the intention of the parties without abandoning reasonable limits upon the boundary of insurable interests."

In *Mechanics Bank v. Commissioners,* 55 Atl. Rep. (New Hampshire), 191, the secretary and treasurer assigned a policy on his life to the bank, but he was an endorser on a large note, the maker of which was insolvent, and the policy was taken out some time before it was assigned to the bank. *Remick, J.,* writes an exhaustive opinion sustaining the right of the bank to retain the amount of the policy. It is not practicable to review the numerous decided cases cited in the briefs. The facts in many of them control the decision. They may be found collected and classified in 1 Cooley Ins. Briefs, 244. The question is a delicate one, and we should hesitate to say more than is necessary to the decision of this appeal.

It appears to us that to some extent anything said is but *dicta,* as there are no facts, no conditions rendering it either necessary or proper to say more than that, in any point of view, the corporation has no right or power, if a stockholder objects, to use its funds for the purpose of paying these premiums. As the case is before us upon demurrer, we do not decide more than that the plaintiff was entitled to enjoin the further payment of premiums on the policy. The adjustment of the rights of the parties as they stood when the action was brought will, unless they can agree, be presented by some appropriate pleadings and orders. The judgment of the court below is

Reversed.