ONSLOW WHOLESALE PLUMBING & ELECTRICAL SUPPLY, INC. v. LEONARD FISHER AND J. DANIEL FISHER

No. 814SC1275

(Filed 21 December 1982)

**Corporations § 14— directive to officer to purchase stock for corporation—officer's purchase of stock for himself—breach of fiduciary duties**

Where defendant was the general manager and an officer and director of plaintiff corporation, a resolution by the original shareholders of the corporation gave the corporation the right of first refusal to purchase any stock of the shareholders, a directive given to defendant by plaintiff's president and chairman of its board of directors to purchase for plaintiff the stock of named shareholders constituted board action pursuant to the provisions of G.S. 55-29(a)(3), and defendant made no objection at the time plaintiff's president and board chairman directed him to purchase the stock for plaintiff, defendant's purchase of the stock for his own benefit constituted a breach of his statutory fiduciary duty as an officer and director under G.S. 55-35, a breach of his duty under his contract of employment as general manager to follow the "orders, advice, and direction" of plaintiff's board of directors, and a breach of his fiduciary duty as an agent of plaintiff corporation to carry out the directive of the board of directors. Therefore, plaintiff corporation was entitled to an order requiring defendant to transfer such shares of stock to the plaintiff.

Judge HEDRICK dissents.

APPEAL by plaintiff from *Barefoot, Judge.* Judgment entered 27 July 1981 in Superior Court, ONSLOW County. Heard in the Court of Appeals 16 September 1982.

This action arose after defendant Leonard Fisher purchased 25,000 shares of plaintiff corporation's stock. Subsequent to this purchase, the defendant transferred 1,000 shares to his son, who is also named as a defendant. In its complaint, plaintiff alleged that on 23 August 1979 plaintiff and defendant Leonard Fisher entered into a renewal contract whereby plaintiff employed defendant as its general manager; that on 1 May 1981 plaintiff's president Dan Rand, acting for plaintiff, instructed defendant to purchase the shares held by three named shareholders on behalf of plaintiff, and that defendant thereafter informed Rand that he had purchased these shares for himself. Plaintiff alleged that by disregarding the instructions given to him, the defendant breached a fiduciary duty owed to plaintiff and acted in bad faith. Plaintiff further alleged that defendant intended to gain control of

the corporation at the next meeting and to increase his salary substantially. Plaintiff prayed for punitive damages.

In a second claim for relief, plaintiff alleged that at the time of the purchase of the stock by defendant Leonard Fisher, defendant was also a director and vice-president of plaintiff; and that his conduct constituted a violation of his statutory duty as a director and officer. Plaintiff further alleged that by purchasing the shares for himself, defendant diverted a corporate opportunity.

In the final claim for relief, plaintiff alleged that defendant had breached his employment agreement. Plaintiff prayed for an order declaring that defendant and his son hold the stock in trust for plaintiff; that the stock be transferred to plaintiff; that plaintiff be allowed to discharge defendant; and that plaintiff be awarded punitive damages.

In response to this complaint, defendants moved for summary judgment. From a judgment granting summary judgment in defendants' favor and denying plaintiff's motion for partial summary judgment, plaintiff appeals.

*White, Allen, Hooten, Hodges & Hines, by John M. Martin, for plaintiff-appellant.*

*Jeffrey S. Miller, for defendant-appellees.*

HILL, Judge.

Plaintiff has assigned error to the granting of defendants' motion for summary judgment on two grounds. It first argues that "the uncontradicted facts in the pleadings, affidavits, deposition and transcript affirmatively showed that the defendant, Leonard Fisher, violated his fiduciary duties owed to the plaintiff as its general manager, agent, officer and director by purchasing for his own benefit those shares of stock which he had been directed to purchase on behalf of the plaintiff corporation." Plaintiff then argues that the uncontradicted facts show that plaintiff had the power pursuant to G.S. 55-52(c)(4) to acquire its own shares. Plaintiff also assigns error to the denial of its motion for partial summary judgment.

"Where a motion for summary judgment is granted, the critical questions for determination upon appeal are whether on

the basis of the materials presented to the trial court, there is a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law." *Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E. 2d 399, 401 (1980). After examining the undisputed facts, we have determined that the trial court erroneously awarded summary judgment on all issues in defendants' favor. The facts instead show that defendant Leonard Fisher violated a fiduciary duty owed to plaintiff corporation.

The following undisputed facts are gleaned from the record: On 13 June 1973 plaintiff corporation was formed and shares of stock were issued to ten shareholders. On 16 July 1973 the shareholders unanimously adopted a resolution giving plaintiff first option or right of refusal to purchase any of their stock. On 5 November 1973 defendant was employed as plaintiff's general manager. An employment contract was later executed by plaintiff and defendant wherein defendant agreed to be general manager "subject to the general supervision and pursuant to the orders, advice and direction of corporation's Board of Directors." The contract further provided:

SECTION TWO

BEST EFFORTS OF MANAGER

Manager agrees that he will at all times faithfully, industriously, and to the best of his ability, experience, and talents, perform all of the duties that may be required of and from him pursuant to the express and implicit terms hereof, to the reasonable satisfaction of employer.

In 1979 defendant became vice-president of plaintiff corporation. Earlier, defendant had been given and had exercised an option to purchase stock in plaintiff. In the latter part of April or early May 1981, defendant met with Dan Rand, plaintiff's president and chairman of the board of directors, and Donald Scott, plaintiff's certified public accountant. At this meeting, the three men discussed the hiring of defendant's son by plaintiff. Also at this meeting, Rand instructed defendant to purchase for the corporation all outstanding shares of stock other than those owned by Dan Russell, Rand and defendant. In his deposition, defendant testified that he attended this meeting as general manager of the corporation. Defendant further testified:

I did not object at that time to the corporation buying in the stock. I didn't say that the corporation didn't have the right or the power or the authority to do it. I didn't say that, but at that time they didn't because the Board of Directors hadn't met and instructed me to buy it. . . . I did not tell Dan Rand, at any time during the meeting, that I would not purchase this stock on behalf of the corporation.

After the meeting, defendant purchased shares of stock in his own behalf from Norman Mercer, James Batchelor and Marshall Batchelor. Defendant never informed these shareholders that he had been instructed to purchase their shares for plaintiff.

Based upon the foregoing undisputed evidence and the pertinent statutes governing corporations, defendant breached a fiduciary duty owing to plaintiff when he purchased the stock of James and Marshall Batchelor. There, however, appears to be a genuine issue of material fact as to whether defendant breached this duty when he purchased Norman Mercer's stock. Defendant testified that before purchasing Mercer's shares, he informed Rand of the asking price and was told not to purchase the stock at this price. If a jury should find this testimony to be true, then plaintiff would have exercised its right of first refusal to purchase the stock.

At the time of the stock purchase at issue, defendant was both a director and officer of plaintiff corporation. G.S. 55-35 provides that "[o]fficers and directors shall be deemed to stand in a fiduciary relation to the corporation and to its shareholders and shall discharge the duties of their respective positions in good faith, and with that diligence and care which ordinarily prudent men would exercise under similar circumstances in like positions." As general manager of plaintiff, defendant had a contractual duty to follow the "orders, advice, and direction" of plaintiff's board of directors. Defendant breached both his statutory and contractual duties when he disobeyed Rand's instruction to purchase stock in plaintiff's behalf.

Defendant's argument, that he was under no duty to purchase the stock for plaintiff since the board of directors had not instructed him to purchase the stock, is without merit. There was undisputed evidence that the board of directors customarily made decisions on an informal basis. G.S. 55-29(a)(3) characterizes action

taken by the required majority of directors without a meeting as board action if "[t]he directors . . . are accustomed to take informal action and this custom is generally known to the shareholders and if all the directors . . . know of the action in question and no director . . . makes prompt objection thereto." On the date that Rand instructed defendant to purchase stock in plaintiff's name, the board of directors consisted of Rand, Dan Russell, Norman Mercer and defendant. The record shows that Rand informed Russell of this action and that Russell made no objection. Defendant admitted that he did not object at the time Rand instructed him to purchase the stock. He also admitted that he and Rand discussed a price that defendant should offer per share. Defendant's conduct could be construed only as consensual. Mercer was never made aware of plaintiff's intention to buy his stock because of defendant's failure to inform him. Defendant intentionally disregarded the directive to purchase Mercer's stock for plaintiff and, thereby, effectively denied Mercer the right either to object or consent to such purchase. This Court will not allow defendant to benefit from his wrongdoing and, therefore, finds no merit to the argument that Mercer objected to plaintiff's purchase of his stock by selling this stock to defendant.

The undisputed facts further show that defendant breached his fiduciary duty as an agent of plaintiff corporation when he disobeyed the directive to purchase stock on plaintiff's behalf. This Court has been unable to find a North Carolina case involving a similar fact situation. The Virginia courts, however, have provided us with a pertinent case. In *Kessler v. Commonwealth Doctors Hospital, Inc.*, 212 Va. 497, 185 S.E. 2d 43 (1971), the Supreme Court of Virginia affirmed the chancellor's decision that Kessler breached a fiduciary duty when he purchased shares of stock in the defendant corporation. The facts therein show that in 1966 a resolution was passed by the board of directors fixing a deadline for the purchase of stock by the directors. The resolution provided that if by a specified date a director had given no notification of his intention to buy stock, then the director who was the licensed agent to sell the stock could dispose of the unclaimed stock among the directors willing to purchase. Kessler was designated the licensed agent. He was also a director and vice-president of defendant corporation. The court found that "Kessler did owe a fiduciary duty to the corporation of which he

was an officer, a director and the Licensed Agent for the sale of stock, to carry out his assigned responsibilities." *Id.*, at 503-504, 185 S.E. 2d at 46. The Court concluded:

> We construe the corporate resolution of December 15, 1966, to require that Kessler consult all interested directors before selling unclaimed shares to himself or any other director. This the chancellor found that he had failed to do. Even if he acted in good faith, this failure constituted a breach of his duty to Commonwealth. Kessler could purchase the unclaimed shares for himself only if he complied with the terms of the board resolution or made a full disclosure of his intentions to the corporation.

*Id.*, at 503-504, 185 S.E. 2d at 47. In the matter now before us, defendant also breached a duty to plaintiff corporation by willfully failing to carry out the directive of the board of directors.

An examination of agency law bolsters our position. "An agent is a fiduciary with respect to the matters within the scope of his agency." 3 Am. Jur. 2d *Agency* § 199 (1962). As general manager, defendant accepted his employment "subject to the general supervision and pursuant to the orders, advice, and direction of corporation's Board of Directors." As an officer and director, defendant was required to discharge his duties in good faith "and with that diligence and care which ordinarily prudent men would exercise under similar circumstances in like positions." *See* G.S. 55-35. The directive given to defendant by plaintiff's president and chairman of the board of directors constituted board action and was therefore within the scope of defendant's agency. Rand had every reason to believe that defendant would carry out this directive faithfully, since he voiced no objection and since he had been an excellent employee. Defendant then breached his fiduciary duty to plaintiff by secretly purchasing the Batchelors' shares of stock for himself.

> It is a familiar and universally recognized doctrine that a person who undertakes to act as agent for another cannot be permitted to deal in the agency matter on his own account and for his own benefit without the consent of his principal, freely given with full knowledge of every detail known to the agent which might affect the transaction. The agent in such cases cannot thus, without the knowledge and consent of the

> principal, unite his personal and his representative character in the same transaction. . . . In all cases the principal is entitled to the best effort and unbiased judgment of his agent, and an agent is not permitted to assume two distinct and opposite characters in the same transaction—acting for himself and pretending to act for his principal.

3 Am. Jur. 2d *Agency* § 220 (1962). *See also Moore v. Bryson,* 11 N.C. App. 260, 181 S.E. 2d 113 (1971). Defendant was instructed by the plaintiff's president and chairman of the board of directors to buy stock for plaintiff. By his silence and conduct he acquiesced in this action and pretended to act for plaintiff. Defendant instead acted for himself.

The issue of whether plaintiff had the power to acquire its own shares of stock has no bearing upon our conclusion that defendant breached a fiduciary duty. Assuming *arguendo* that the plaintiff's purchase of its stock was *ultra vires,* defendant as a shareholder acquiesced to the purchase and is barred from raising this defense. *See Victor v. Mills,* 148 N.C. 107, 61 S.E. 648 (1908).

An issue was also raised as to whether defendant was aware of the original shareholders' resolution giving plaintiff right of first refusal to purchase their stock. Defendant testified that he was unaware of such a restriction. There was also no evidence that the pertinent stock certificates contained a restriction. Restrictions on the transfer of stock must be stated on the certificate in order to be valid against transferees without notice. R. Robinson, N.C. Corporation Law and Practice § 7-10 (2d Edition 1974). *See also* G.S. 25-8-204. Regardless of the existence of such a restriction and defendant's awareness of it, defendant cannot assume the role of plaintiff's agent in purchasing its stock and then legally purchase the stock for himself.

Defendant relies heavily upon a Pennsylvania case to support his position that he had the right to purchase the stock for himself. In *Vulcanized Rubber & Plastics Company v. Scheckter,* 400 Pa. 405, 162 A. 2d 400 (1960), two of the defendants were lawyers and accountants employed by Vulcanized Rubber & Plastics Company (hereinafter, "the Corporation"). During the period in question, both the Corporation and a syndicate, composed of directors, officers and employees of the Corporation, were attempting to buy the Corporation's common shares. The

syndicate members, which included defendants, entered into a "gentlemen's agreement" that they would not purchase the stock individually. Defendants breached this agreement. The lower court issued a preliminary injunction restraining defendants from voting their stock on the basis that the Corporation had shown a breach of fiduciary duty. The Pennsylvania Supreme Court reversed the order and granted a preliminary injunction. The Court held that the "corporation, as a corporate entity separate and apart from its management group, had no interest in purchasing the stock in issue, nor did it have any corporate interest or connection with the Vulcanized Stock Syndicate which could result in the appellee being legally harmed by the conduct of the appellants." *Id.* at 413, 162 A. 2d at 405. In reaching this conclusion, the *Scheckter* Court cited the following rule:

> Generally speaking, a corporation as such has no interest in its outstanding stock, or in dealings by its officers, directors or shareholders with respect thereto. [Citations omitted.] As a result, in and of itself, there can be nothing improper so far as the corporate entity is concerned with one of its fiduciaries, be he officer, director or otherwise, buying up a controlling number of shares. [Citations omitted.] Nor can it be of any consequence, therefore, if the control is secretly acquired (which as a practical matter will usually be the case, for to do so otherwise will result in a rise in the market price).

*Id.*, at 411-412, 162 A. 2d at 404-405. This general rule should not apply to the situation where an individual as director and shareholder of a corporation consents to the corporation's purchase of its own stock and thereafter by his conduct leads the corporation to believe that he will act as the corporation's agent in the stock purchase, but instead buys the stock for himself.

We also find that the holding in *Scheckter* is not controlling since the facts therein are significantly different from the facts here. In *Scheckter* the Court emphasized, "There being no indication in the record that the board of directors as a body ever considered purchasing any stock, there could not be any existing corporate interest therein." *Id.*, at 415-416, 162 A. 2d at 406. In the record before this Court, there was undisputed evidence that the plaintiff corporation had purchased its stock in the past. In

*Scheckter,* the record also showed that the corporation would have been financially burdened by any stock purchase. The undisputed facts here reveal that plaintiff had ample surplus available to purchase the shares of stock at issue. Finally, and most importantly, none of the defendants in *Scheckter* had been personally instructed by the corporation's president and chairman of the board of directors to purchase stock for the corporation. Defendant held himself out as an agent of the corporation and in equity and good conscience was bound to act in good faith.

Based upon the record before us, the trial court was required to find as a matter of law that defendant breached its fiduciary duty to plaintiff when he personally purchased the stock of James and Marshall Batchelor. Plaintiff is therefore entitled to an order requiring defendant to transfer these shares to plaintiff.

This Court finds plaintiff's request for an order allowing it to discharge defendant to be a moot issue. Under his employment contract, defendant's employment was to expire 31 August 1982. The contract was to be considered renewed for periods of one year, provided neither party submits a notice of termination.

Plaintiff also sought punitive damages but failed to allege any right to receive either nominal or compensatory damages. A party is not entitled to punitive damages unless a cause of action otherwise exists and at least nominal damages are recoverable. *Clemmons v. Insurance Co.,* 274 N.C. 416, 163 S.E. 2d 761 (1968). Furthermore, plaintiff sought an adequate equitable remedy.

To summarize our holding:

We affirm summary judgment in favor of defendants on the issue of punitive damages.

In all other respects we reverse summary judgment in favor of defendants and find plaintiff to be entitled to summary judgment on the issue of breach of fiduciary duty in regard to defendant Leonard Fisher's purchase of shares of stock from James and Marshall Batchelor.

The matter is remanded for trial on the issue of breach of fiduciary duty in regard to defendant Leonard Fisher's purchase of shares of stock from Norman Mercer.

---

Affirmed in part; reversed in part and remanded to the trial court for disposition in accordance with the provisions set out herein.

Judge MARTIN concurs.

Judge HEDRICK dissents.