Peauson, J.
 

 This is a petition by the administrator of William Tull, fordicenoe to sell the real estate, under the provisions of the act of 1846, Ch. 1.
 

 The petition shows, that the personal estate has been exhausted, and there are debts unpaid to a large amount. It sets forth, that the intestate, a short time before his death, being much in debt, purchased of one Foy, a tract of land at the price of §3250, paid the purchase money, and for the purpose of defrauding his creditors, caused the title to be made to two of his sons, who, with the other children, are made parties defendant. The defendant demurred, and the demurrer was sustained by the Court, the petition dismissed, and the plaintiff appealed.
 

 The demurrer raises the question, does this case come within the operation of the Act of 1846 ?
 

 This Statute makes an important change in the law, relative to the real estate of deceased debtors. It evidently was the intention of the Legislature to give it a very comprehensive operation. This being the first case, calling for its construction, we have devoted to it much consideration, with a desire fully to carry out the intention, and to avoid all difficulty hereafter, by taking a fair start.
 

 
 *60
 
 The 11th section enacts : “ The real estate, liable to be sold under this Act, shall include all rights of entry, and rights of action, and all other rights and interests in lands, tenements and hereditaments, which, by law,
 
 descendió the heirs of the deceased;
 
 and all lands which the deceased may have conveyed, with intent to defraud his creditors;
 
 provided,
 
 that only such land shall be liable to be sold, as would have been
 
 liable to attachment, or execution, by a creditor of the grantor, in his lifetime.”
 

 The case before us is not embraced by either clause of this section. No right or interest, legal or equitable, descended to the heirs of the deceased. His two sons acquired the lands by purchase, and not by descent; it was conveyed to them in trust for their father, with an intent to defraud his creditors. This trust was not fit to be enforced by a Court of Equity, and neither the father, or the other children, could be allowed to set it up. In fact, it could not, as a trust, be recognised in favor of any person; a Court of Equity could not recognise and enforce it as a trust, even in favor of a creditor. The equity of a credit- or for relief, would not be based on the idea of such a fraudulent and corrupt trust; but upon the distinct ground of the fraudulent intent to withdraw the estate of the. debtor from the payment of his creditors. As there was no trust, which a Court of Equity could recognise, the Administrator cannot, under this clause, entitle himself to the license to sell, by claiming to represent the deceased debtor, or his - heirs; for, in contemplation of law, he had no right or in. terest, and, of course, nothing could descend to them.
 

 The other clause of the section gives the Administrator á right to a license to sell all land, which the deceased may have conveyed, with intent to defraud his creditors, under the idea of his representing them. We have noticed the fact, that, by this clause, the personal representative has
 
 *61
 
 more power over land, than he possesses over a chattel; he is bound by the gift, and creditors can only impeach it, by an action against the donee, as Executor
 
 de son tort.
 
 This would be a strong argument in favor of allowing this clause to embrace any and every case of fraud in regard to land, but for the restriction which is put on such a latitude of construction by the
 
 proviso.
 
 This confines it tp such land, as would have been liable to attachment or execution, by a creditor of the grantor, in his lifetime. Here it is seen, that the land contemplated, is such as the deceased had conveyed, as grantor; and such as a creditor could have reached by attachment or execution. The land in question is, necessarily, excluded from the operation of the Statute, on both these grounds. It was not conveyed by the deceased, as grantor, nor was it liable to attachment or execution, by a creditor, because the Statute, 13 Eliz does not apply to it, for this plain reason, if the conveyance to the sons is treated by the creditors as a nullity, the title is still in Foy, the original owner.
 

 But it is said, although the land in this case could not have been sold by execution, under the Statute of Elizabeth, yet there was a trust in favor of the deceased debtor, which could have been sold by execution, under the Act of 1812, Rev. Stat. ch. 45; and, as the Administrator is intended to represent creditors, a liberal construction, which is called for by the manifest intention to give the Statute an extended operation, will include all lands, which the deceased had conveyed, or
 
 caused to be conveyed,
 
 with an intent to defraud creditors,
 
 provided,
 
 it could have been reached by execution, in the lifetime of the debtor.
 

 •To this view there are two fatal objections:
 
 First,
 
 the words of this clause evidently confine it. to land, which had been conveyed by the deceased, and which would have been liable to be sold, as land, under an execution by the
 
 *62
 
 creditors of the grantor. Secondly, the land being, by the direction of the deceased, conveyed to his two sons in trust for himself, with an intent to defraud his creditors, was an attempt to create a trust, which failed, because such a trust could not be enforced in a Court of Equity, as 'explained above; and, consequently, it was not such a trust, as was liable to be sold by the Act of 1812. That Act includes only such trusts, and equitable interests, as are re-cognised, and can be enforced by Courts of Equity. The purchaser comes in under the
 
 cestui que trust,
 
 and acquires from him the trust, which draws to it the legal estate, in the same way as if a Court of Equity had decreed a conveyance. Of course it cannot apply where there is no trust which that Court recognises, or will execute, even in favor of a creditor, upon the footing of a trust. In this the operation of the Act of 1812 differs from that of the Statute of Elizabeth; there, the land is sold, and the purchaser takes title above, and in spite of, the fraudulent do-nee, the conveyance of the debtor being treated as a nullity ; whereas, under the Act of 181.2,
 
 the trust
 
 is sold, and is treated throughout as a valid subsisting right, which may be set up and enforced.
 

 In our case, there is no such valid, subsisting trust; and the creditors must go into Equity, not on the notion of a trust, but because the estate of the debtor has been put into the hands of third persons by a fraudulent contrivance.
 

 Peii CukiaM, The decree sustaining the demurrer affirmed.