PeaesoN, '-C. J.
 

 The plaintiff alleges that be is entitled to certain slaves, subject to the life estate of Sarah Brantly ; and that the defendant, who has acquired the life estate, under pretence that he is entitled to the absolute estate in three of 'the slaves, is about to carry them to the State of Tennessee, where he resides. The object of the bill is to have the slaves sequestered, so as to have them forthcoming at the death of ■Sarah Brantly.
 

 We are not-satisfied by the proofs, that John Brantly, who, the plaintiff admits, was a tenant in common with him, is dead without children, but we are satisfied that he has left the State and ,-gone to parts unknown ; and, for this reason, we are of opinion that the bill, which does not seek a final adjudication of the rights of the parties, but only to have the property secured, can be maintained by the plaintiff, and that John Brantly is not a necessary party. In
 
 Brown
 
 v.
 
 Wilson,
 
 6 Ired. Eq., 558, a remainderman, who had but a
 
 contingent 'mterest,
 
 subject to the death of the tenant for life without having a child, was allowed to maintain a bill of this kind, for the purpose of securing the property.
 

 Where there is a reasonable ground of apprehension the bill will be maintained, unless it appears that the defendant is entitled to the absolute estate. The defendant denies that he ever announced a purpose to carry the slaves out of the State ; but he claims them absolutely, and as he lives in Tennessee, and these slaves have been allotted to him in the division of his father’s estate, we are satisfied there is a ground to apprehend that he will take them out of the jurisdiction of this Court.
 

 So the question turns upon the title to the slaves.
 

 1. Did the slaves, Sarah and Cassandra, (from whom the.
 
 *337
 
 others are descended,) pass to Dupree, under the marriage settlement executed by Sarah Brantly, (then Sarah Kee)? The words are, “all the estate-or property which she
 
 now jpossesses.”
 
 “ Possess ” is frequently used in the sense of “ own,” “ entitled to and although the word “ now,” in connection with the fact that Mrs. Brantly’e. title was subject to a life estate, raises a doubt whether it was not intended to exclude the property to which she was -only entitled in remainder, still the fact that there was no 'motive, for not including in the settlement all the property or estate which she owned, inclines us to the conclusion that she did intend to convey all that she owned, in which sense “possesses” was used; so that point will be conceded to the defendant, and we will not enter into evidence, as to whether the slaves had not been, before that time, put into her possession, by her mother, the tenant for life, or whether, just before the date of the deed, they had been taken away from her.
 

 2. There are three grounds upon which the defendant, who claims under George Kee, can not be considered, in this court, as the owner of the remainder in these slaves, after the death of Mrs. Brantly.
 

 1. By the effect of the deed to Dupree, and the marriage, "Wyatt Brantly, upon the death of the tenant for life, was .entitled to the slaves for the life of his wife. The effect of his deed to Tillar, was to give Mrs. Brantly an estate in the slaves for her life, with a limitation over to his two sons. After his death, Mrs. Brantly elected to take, under this deed, and went into the enjoyment of a life estate. -So the matter stands thus-: under the deed to Dupree, Brantly was entitled to the life estate, and Mrs. Brantly to the remainder ; under the deed to 'Tillar, Mrs. Brantly was entitled to the life estate, and the children of Brantly to the remainder — thus effecting an exchange of the estates ; which was advantageous to Mrs. Brantly, as she had no child. At all events, she so considered it, .and after the incapacity of coverture was removed, made her .election ; and it is against conscience and a well established principle of equity, for her, or one claiming under her, after
 
 *338
 
 the enjoyment of the life estate, derived from her husband, to attempt to set up her title to the remainder under the deed to Dupree; for thereby she would defraud Brantly’s children, either out of the life estate, or of the remainder, and to prevent this, she must abide by her election to take the life-estate, and let them have the remainder.
 

 2. Mrs. Brantly was a party to the proceedings had in the Court of Chancery, of Greensville county, Virginia, by which George Kee was substituted as trustee, in the place of Tillar. The parties in that proceeding, set up title under the deed to Tillar, and it is admitted, and acted upon as
 
 a fact,
 
 that Mrs. Brantly was entitled to an estate for life, and 'William and John Kee to the remainder. So the case comes directly within the principle of
 
 Armfield
 
 v. Moore, Busb. Rep., 157, and George Kee, as privy in estate, is bound by the estoppel, which, in this instance, operates to prevent a fraud.
 

 3. George Kee, by his appoinment as trustee in the place of Tillar, by the execution of a bond for the faithful performance of the duties of trustee, according to the provisions of the deed to Tillar, and by taking the slaves into his possession, became invested with all the rights and duties of a trustee for Mrs. Brantly, and.for William and John Brantly, and when he acquired tlie adverse title of Mrs. Brantly, under the deed to Dupree, is presumed to have taken up this adverse title for the benefit of his
 
 eestuis qui
 
 trust, William and Johu Brantly, upon the well settled principle of equity, that where a trustee purchases in an outstanding, adverse title, lie is considered as doing so, not for his own, but for the benefit of his
 
 eestuis qui trust;
 
 and the principle applies more strongly where the title is acquired, not by purchase for value, but as a mere volunteer — by his
 
 own
 
 aet, and not by the act of law. The correctness of this principle, and its necessity, in order to- prevent one who has undertaken to protect the rights of others, and by his fiduciary relation has had the means of knowing the condition of the title, from committing a fraud and betraying liis trust, will strike every one’s sense of justice, without further explanation, and is too plain to require the citation of
 
 *339
 
 authorities. The principle, is, under certain circumstances, acted on at law : Tenant for life makes a feofment to A for life, remainder to B in fee ; the first feofor releases to A ; it operates “ by way of extinguishment,” and enures as well to the benefit of B as of A. So a disseisor makes a feofment to two; the disseisee releases to one of them ; it enures to the benefit of both ; taking under the same conveyance they are privies in estate, and the act of one in getting in the outstanding right, is presumed to be for the benefit of his fellow as well as himself.
 

 Our case is a striking instance in illustration of the principle. As soon as Kee gets possession of the slaves, he brings them into this State, and thereupon turns “ traitor in the camp,” and instigates one of his
 
 cestuis qui t/rust
 
 to attempt a fraud upon the others, by setting up and conveying to him an outstanding, adverse title to the remainder, after her life estate. This is not simply a constructive fraud, but actual fraud and dishonesty!! Can he, or a volunteer under him, ask to be considered, in a court of equity, as having, by such means, defeated the rights of his
 
 cestuis qui trust
 
 and bécome the owner of the absolute legal and beneficial estate ?
 

 The sequestration will be continued, to the end that the defendant may give a sufficient honcl not to remove the slaves beyond the jurisdiction of this Court, and to have them forthcoming at the termination of the life estate.
 

 Per Curiam, Decree accordingly..