The plaintiff alleges he held a bond on the defendant Freeman to execute title to certain lots of land on the payment of the purchase money; that he paid the purchase money and directed (586) Freeman to make the title to the other defendant, Lisk, in trust for the separate and sole use of the plaintiff's wife and her children; and that the defendant Freeman executed a deed to the defendant Lisk for that purpose, but owing to the ignorance or mistake of the draftsman the deed is inoperative, because it sets out no consideration to raise the use upon which the statute can operate, so as to pass the legal estate; and the prayer is that the defendant Freeman shall execute a deed valid and sufficient for that purpose.
The defendant Freeman declines to do so, on the grounds, (1) that the purpose of the plaintiff in directing the deed to be made to his codefendant, Lisk, for the sole and separate use of his wife and children, was to defraud certain creditors who have debts against the plaintiff, contracted prior to the time when he made the first deed, which debts still remain unpaid; (2) because after the execution of the first deed, which turns out to be inoperative, the plaintiff assigned all his right and interest in the lots, and his equity to call for a reexecution of a deed under the title bond, to D. Kendall and A. C. Freeman, to indemnify them as his sureties to a debt contracted for $275, and took from them a covenant to reconvey, provided he paid the debt on or before 1 January, 1855; that before that date he informed A. C. Freeman that he would not be able to pay the debt, and that he (A. C. Freeman) and D. Kendall must pay it, and reimburse themselves out of the land, and surrendered to A. C. Freeman the covenant for reconveyance; that accordingly A. C. Freeman paid off the whole of the debt and took possession of the land; that afterwards the land was sold under execution as the property of A. C. Freeman, when the defendant Freeman became the purchaser at the price of $150, and took the sheriff's deed therefor, and that Kendall has (587) conveyed all his interest to him, and that he has been in possession, claiming the land as his own, since 12 May, 1857.
The proof offered by the defendant Freeman establishes the fact that there are several old debts of Haskill, contracted before the date of the deed to Lisk, still unpaid. But the defendant has not proved the allegation that Haskill surrendered to A. C. Freeman the "covenant for reconveyance." The testimony of A. C. Freeman is that Haskill told him he *Page 383 
and Kendall would have the debt to pay, and must try to save themselves out of the land, as he was unable to pay it; and that he (A. C. Freeman) did pay the whole debt. The witness adds that "after the execution of the deed to Kendall and himself, Haskill surrendered the house and lots embraced therein to deponent."
After Haskill paid the purchase money, Freeman held the legal title in trust to convey to Haskill, or any one according to his directions, and the attempt to convey to Lisk being ineffectual, by reason of the ignorance of the draftsman, the plaintiff's equity to call for a reexecution is a very plain one, unless it can be opposed on one of the grounds relied upon by Freeman.
1. It seems not to have occurred to Freeman at the time he executed the deed to Lisk, according to the directions of Haskill, that he was relieved of the obligation to perform the trust, on which he held the legal title, by reason of the indebtedness of Haskill, of which he had notice; and we are not aware of any principle of law or equity by which he can now fall back upon and shelter himself behind the rights of Haskill's old creditors, with whom he is in no wise concerned. The deed which he is now called on to execute will not tend to "hinder or delay" the remedy of those creditors; on the contrary, it will aid them by getting the title out of him and freeing it from all complication. His deed will be valid between the parties, and is not rendered void by the statute 13 Eliz., which applies only to conveyances made by the debtor, and in respect to creditors the case will come under the principles (588) discussed in Rhem v. Tull, 35 N.C. 57.
2. The deed of Haskill passed his equitable interest to Kendall and A. C. Freeman, subject to Haskill's right of redemption. It is not proved that Haskill surrendered to A. C. Freeman the covenant for reconveyance, and the fact that "he was unable to pay the debt and he and Kendall must do it, and try to save themselves out of the land," did not operate to extinguish his right of redemption.
Indeed, we are inclined to think that if he had surrendered, that is, handed back the covenant, it would not have had that effect, for there was no consideration paid; it was a voluntary act, and did not amount to a release, without which the rule applies, "Once a mortgage, always a mortgage."
Had A. C. Freeman sold the land for the purpose of raising money to pay the debt, the purchaser might have stood on higher ground; but he chose to pay the money and keep the land, or rather the equitable interest, which he had acquired, and of course held it subject to Haskill's right of redemption until it was foreclosed or released, or presumed to be abandoned from the lapse of time. The defendant D. Freeman then comes in as a purchaser at sheriff's sale, and stands in the shoes of *Page 384 
A. C. Freeman, in respect to the title, for it is well settled that a purchaser at sheriff's sale takes only the interest or title of the debtor; and the deed of Kendall, taken by the defendant Freeman, with notice and without a valuable consideration, leaves the equitable interest in his hands, subject to the plaintiff's right of redemption, and the thing has worked around in such a way that he is now in a condition to execute the title, which he before made an ineffectual attempt to do.
It occurred to us at one time that Kendall and A. C. Freeman ought to be before the court; but we are satisfied it was not necessary to make them parties, as it appears by the answer of the defendant Freeman (589) that he has acquired their title, and they have no interest in the subject of controversy.
Another question is presented. In making redemption, is Haskill to pay the amount of the debt paid off by A. C. Freeman, or only the amount paid by the defendant Freeman when he purchased at sheriff's sale, to wit, $150? How it would be if a third person had purchased, it is unnecessary to decide, for we are satisfied that all the defendant Freeman is entitled to is to be indemnified against his outlay, on the ground that he held the legal title as a trustee, and in making the purchase advanced money in order to buy in an outstanding encumbrance which clogged the estate of hiscestui que trust, and is not at liberty to speculate upon it. This is a familiar doctrine of equity.
There will be a decree for the plaintiffs, and a reference to ascertain the amount due, charging Freeman with rents and profits since he has been in posession [possession] and crediting him with the amount paid to the sheriff and interest.
NOTE. — Vide Blount v. Carraway, 67 N.C. 396.
Where a purchaser at execution sale gets no title by reason of defective description, he was subrogated to the rights of the execution creditor to the extent such creditor was benefited and the execution debtor exonerated by the sale. Pemberton v. McRae, 75 N.C. 497. See Rowland v. Thompson,73 N.C. 504.
A purchaser at execution sale takes subject to all equities against the defendant, whether he has notice of them or not. Rollins v. Henry,78 N.C. 342; Hicks v. Skinner, 71 N.C. 539; Richardson v. Wicker,74 N.C. 278. *Page 385