WOODLIEF v. WOODLIEF.

(Filed October 4, 1904).

1. TENANCY IN COMMON—*Estates.*

> The fact that a testator, who owned only a five-eighths interest in
> certain land, devised the entire tract, does not prevent one of
> the remaindermen from purchasing certain of the outstanding
> interests as against his tenants in common.

2. TENANCY IN COMMON—*Adverse Possession.*

> To bar a co-tenant the possession of a tenant in common must be
> exclusive under a claim of right, with no recognition of the
> rights of the co-tenant, and for twenty years.

3. TENANCY IN COMMON—*Evidence—Declarations.*

> The acts and declarations of a life tenant are admissible against
> remaindermen for the purpose of showing that her possession
> was not adverse to certain of her tenants in common.

ACTION by R. R. Woodlief against T. H. Woodlief and
others, heard by *Judge Frederick Moore* and a jury, at Jan-
uary Term, 1904, of the Superior Court of FRANKLIN
County. From a judgment for the plaintiff the defendant
appealed.

*F. S. Spruill* and *W. H. Ruffin,* for the plaintiff.
*W. M. Person,* for the defendant.

CONNOR, J. This was a special proceeding for partition
of the land described in the complaint. The defendants
filed answers raising issues of fact and the cause was trans-
fered to the civil issue docket for trial. There are several
branches to the litigation growing out of claims of inter-
venors holding mortgages upon shares of some of the parties.
The question presented by the record and argued before us

has no connection with these collateral issues and we shall omit any reference to them. The facts in regard to which there seems to be no controversy, are: Henry Merritt died July 4, 1861, devising to his wife, Polly Merritt, for life "all of his real and personal property." He directs that his daughter, Sallie Woodlief, "remain on the tract of land whereon she now lives, on the north side of the creek, containing sixty-five acres of land, during her life and at her death it is my will that the said sixty-five acres of land remain in the possession of her children till the youngest child becomes 21 years old, then the said tract of land to be equally divided between the heirs of the body of my said daughter," etc. Plaintiff introduced evidence tending to show that Henry Merritt was in possession of the land up to the time of his death; that he put his daughter, Sallie Woodlief, on the land during the year 1859, and that she remained there until she died, June 25, 1902. The defendant put in evidence a deed from Henry S. Fuller to Henry Merritt, dated June 10, 1859, purporting to convey an undivided one-fourth interest in the land, reciting that one-eighth had been bought from Jonathan P. Fuller; also, a deed from James W. Williams and Joseph W. Fuller to said Henry Merritt, conveying all the right, title and interest which they had in the sixty-five acre tract "in right of their mother, Mirah P. Fuller, who was Mirah P. Duke." This deed bears date October 15, 1859. The defendant introduced J. P. Strother, who testified as follows: "I am 74 years old; I have known the land in controversy for fifty-two years; knew Henry Merritt and his wife, Polly, and daughter, Sallie Woodlief. Henry Merritt told me that he had bought five-eighths of the sixty-four acre tract in controversy, and that Rhoda Fuller, Celia Fuller, who married Sabret Card, and Frances Moore, who married F. M. Moore, owned the other three-eighths. The parents of Rhoda Fuller were Sol-

omon Fuller and his wife, who was a Duke. Sallie Wood-
lief was in possession of the land in controversy until she
died, June 25, 1902. T. H. Woodlief has been in possession
since his mother died. T. H. Woodlief has been in posses-
sion of a part of that land from the time he bought the Card
interest. He went into possession of Rhoda's part and has
been in possession of these (three) shares of it. Sallie
Woodlief claimed the whole of the sixty-four acres, except
three-eighths. T. H. Woodlief paid his mother rent as long
as she lived. Solomon Fuller had eight children. The
sixty-four acre tract was known as the Duke land. The de-
scription in the deeds of F. M. Moore, Sabret Card and
T. H. Woodlief and Rhoda Fuller to Polly Merritt em-
brace the land in controversy."

T. H. Woodlief swore that he had been in possession of
a part of the land since 1864. He was asked what agree-
ment he had with his mother in respect to a part of the land
he was to have representing the outstanding shares he had
bought. Upon objection this question was excluded and de-
fendant, T. H. Woodlief, excepted.

Defendant put in evidence a deed from Rhoda Fuller to
Polly Merritt, dated December 17, 1864, conveying all of
her right, title and interest in the land in controversy which
she inherited from her grandmother, Lucy Duke. Deed
from Polly Merritt to Sallie G. Woodlief, dated October 13,
1881, conveying all of her right, title and interest. Deed
from Sallie G. Woodlief to T. H. Woodlief, dated March
15, 1902, conveying "a certain tract or parcel of land (giving
boundaries) and known as the Rhoda Fuller interest in the
Duke tract of land which said interest the said Rhoda Ful-
ler inherited from her mother, Mirah P. Fuller, containing
seven acres of land more or less."

Deed from Sabret Card and wife, Celia, to T. H. Wood-
lief, dated March 12, 1866, describing a certain tract of

land (giving abutting owners) containing seven acres. Deed from F. M. Moore to T. H. Woodlief, dated October 22, 1864, describing "all the right, title and interest which I have in and to a tract of land containing sixty acres more or less, known as the Duke tract of land, which said interest the said Francis M. Moore inherited from her mother, Mirah P. Fuller."

Assuming that the deeds set forth cover the *locus in quo,* and of this there is the uncontradicted testimony of Jno. P. Strother, the title to the land in controversy was, prior to 1859, in the eight children of Solomon Fuller and wife. Five-eighths undivided interest passed to Henry Merritt by the deed set out in the record, leaving three-eighths outstanding. Henry Merritt went into possession of the entire tract and settled his daughter, Sallie, thereon, and by his will gave the land, without reference to his interest therein, to his wife, Polly, for life, with the direction that his daughter, Sallie, would "remain" thereon during her life, and at her death said land "to remain in the possession of her children until the youngest child became 21 years of age, then to be equally divided between the heirs of her body." It does not appear that Polly Merritt was ever in the actual possession of the land. Rhoda Fuller, in 1864, conveyed her interest in the land to Polly, who, in 1881, conveyed to Sallie Woodlief, who, in 1902, conveyed to T. H. Woodlief. Sallie died in 1902, leaving six children, R. R. Woodlief, who purchased the interest of two others; G. L. Woodlief, D. H. Gill and defendant, T. H. Woodlief. T. H. Woodlief, in 1864 and 1866, purchased the outstanding interest in the tract from Card and Moore, hence, except in so far as the title is affected by the statute of limitations, at the death of Sallie Woodlief, the legal title to five-eighths vested in her six children under the will of Henry Merritt. The other three-eighths vested in T. H. Woodlief. The plaintiff contends,

however, that Polly Merritt and Sallie Woodlief having gone into possession under the will of Henry Merritt, devising to them for life the entire tract, could not, by any act of theirs, change the character or effect of such possession by purchasing the outstanding interest of Rhoda Fuller. In other words, that the will of Henry Merritt was an assertion of title to the entire tract, and the possession thereunder by his wife and daughter for life could not change the character of such possession in respect to the owners of the outstanding three-eighths. In *Day v. Howard,* 73 N. C., 1, *Pearson, C. J.,* says: "There is a fellowship between tenants in common, the law asumes that they will be true to each other; the possession of one is the possession of all and one is supposed to protect the right of his co-tenants and is not tolerated in taking an adversary position unless he acts in such a manner as to expose himself to an action by his fellows on the ground of a breach of fealty; that is an actual ouster. * * * If a tenant in common conveys to a third person the purchaser occupies the relation of a tenant in common although the deed purports to pass the whole tract and he takes possession of the whole, for in contemplation of law his possession conforms to his true and not to his pretended title." In *Covington v. Stewart,* 77 N. C., 148, it is held that the possession of one tenant in common is the possession of all, but if one have the sole possession for twenty years without acknowledgment on his part of title in his co-tenant, and without any demand or claim on the part of such co-tenant to rents, profits or possession, he being under no disability during the time, the law in such cases raises a presumption that such sole possession is rightful and will protect it.' It is also held in that case that under our statute of limitations such sole possession vests title. *Neely v. Neely,,* 79 N. C., 478; *Caldwell v. Neely,* 81 N. C., 114; *Ward v. Farmer,* 92 N. C., 93; *Hicks v.*

*Bullock,* 96 N. C., 164. The possession of Polly Merritt and Sallie Woodlief, being consistent with the rights of their co-tenants, we can see no good reason why they could not buy the interest of their co-tenant, Rhoda Fuller. The doctrine of election does not apply to the facts in this case. The cases of *Horton v. Lee,* 99 N. C., 227, and *Brown v. Ward,* 103 N. C., 173, cited by counsel, are distinguishable from our case. In both those cases there was an attempt to assert title to land at the time of making the will in the devisee, who had taken the same land under the will. This, upon the familiar equitable doctrine of election, cannot be done. The principle in regard to the estoppel is that when the plaintiff and defendant claim from a common source, the defendant cannot prevent a recovery by simply showing an outstanding title in a stranger, unless he connects him self with such title, or shows that he has acquired it. *Copeland v. Sauls,* 46 N. C., 70; *Caldwell v. Neely, supra; Ray v. Gardner,* 82 N. C., 146. The rule is not based upon the equitable doctrine of election, but is a rule of practice adopted for convenience. It does not go to the extent of saying that a grantee may not buy in an outstanding interest and assert it in an action brought against one claiming under the same grantor, but that he may not show it for the purpose of defeating the action unless he has purchased or by other means acquired it. *Bickett v. Nash,* 101 N. C., 579; Bigelow on Estoppel, 357. In this case Polly Merritt nor those claiming under her have purchased any hostile claim to the land, Henry Merritt owned five-eighths interest, which passed to Polly and Sallie for life. They simply bought a one-eighth interest and conveyed it to T. H. Woodlief, who is settling it up, not to defeat any title acquired under Henry Merritt, but admitting the title as he owned and claimed to own, in the devisees. He says: "I own by this conveyance the one-eighth owned by Rhoda Fuller."

We can see no reason why he may not do so, unless he has lost it by the statute of limitations. As to the other two-eighths he purchased directly from the owners; there was certainly nothing in his relation to the title or the other parties to prevent his doing so. The plaintiff, however, insists that he has lost whatever right he acquired by such purchase by the lapse of time. This brings us to consider the character and effect of Sallie Woodlief's possession as against her son, T. H. Woodlief. Polly Merritt was never in possession. We will assume, however, that Sallie Woodlief was in, under the will, and that her possession so far as it operated to bar the entry of the owners of the three-eighths undivided interest inured to the benefit of her children. What was the extent and character of such possession? It must be kept in mind that to work an ouster and bar the other tenants, her possession must be exclusive and under a claim of right with no recognition of their rights continuing for twenty years. His Honor so charged the jury. As the plaintiffs are claiming that the title to the *three-eighths* was entinguished by her actual possession, working an ouster, they are bound by her acts and declarations in regard to the *possession,* its extent and character. It must be remembered that we are not now dealing with *title* but with *possession.* The life tenant certainly could not by her acts or declarations disparage or injuriously affect their title. It is not claimed that Henry Merritt, their devisor, had or could confer upon them title to more than five-eighths, but that by an assertion which was not true, by a breach of fealty on his part he put Sallie Woodlief in a position which if maintained enabled her at the end of twenty years to give to her children the title, which she never had or could have, for she could under no circumstances have more than a life estate. This being the case, we can see no reason why her acts and declarations in regard to her possession are not compe-

tent.  She was under no obligations to assert a possession
beyond her actual title.  She could, and it was her duty to
say to the owners of the outstanding interest that she claimed
only to the extent of her true title.  In the absence of any
declaration to the contrary the law so regarded her.  When
she purchased the Rhoda Fuller interest she said in the most
unmistakable manner that she recognized her as a tenant in
common.  When she sold it to T. H. Woodlief she said by her
solemn deed that she was not claiming against Rhoda Fuller.
T. H. Woodlief bought the Moore interest in 1864 and the
Card interest in 1866.  It is very doubtful whether after
that time she could claim to hold adversely to him.  He
offered testimony tending to show that he was in possession
with her, after making the purchase, and that they had some
understanding as to the part of the land which he was to
have by reason of his purchase.  Of course no such under-
standing can bind the plaintiff or affect his title, but it is
competent as showing the extent and character of her pos-
session.  If, at the time T. H. Woodlief purchased, his
mother had been in the exclusive possession for twenty years
it may be that she could not then by any act of hers affect
the rights which had been acquired by such long possession,
but when he purchased the two-eighths, she had been in posses-
sion for only three and five years.  At that time her posses-
sion was consistent with the rights of the co-tenants, and
any recognition by her of such title would inure to the bene-
fit of T. H. Woodlief.  The testimony should have been ad-
mitted.  The instruction given the jury as a general propo-
sition is correct.  As the entire charge is not sent up it is
impossible for us to know how it was related to the instruc-
tions given and excepted to.  As the case goes back for a new
trial we do not deem it proper to pass upon any other ex-
ception than that directed to the exclusion of the evidence
of the acts and declarations of Sallie Woodlief in regard to

the extent and character of her possession.  As the parties
do not claim under her we see no objection to the compe-
tency of T. H. Woodlief to testify as to such declarations.
There must be a new trial.

New Trial.