EMILY MYERS ALLEN, CO-EXECUTOR OF THE ESTATE OF SAMUEL G. ALLEN, DECEASED v. JAMES S. CURRIE, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA.

(Filed 10 May, 1961.)

**1. Fiduciaries—**

An executor acts in a fiduciary capacity. G.S. 32-2, G.S. 105-163.1(8).

**2. Executors and Administrators § 6—**

Title to personal property of a person vests in his executor upon his death, but the executor takes title in trust for the payment of debts and the distribution of the assets in accordance with the terms of the will or in conformity with the rules of distribution.

**3. Taxation § 30½—**

The fact that a distributee of an estate is a nonresident does not warrant the exemption of a proportionate part of the intangibles of the estate from the State intangibles tax when the will does not bequeath the nonresident any specific property or set up a trust, since in such event the executor neither holds nor controls any specific intangible property for the benefit of such nonresident. G.S. 105-212.

APPEAL by defendant from *Crissman, J.,* September Term, 1960, of MOORE.

Civil action under G.S. 105-266.1(c) to recover for alleged overpayment of intangible personal property taxes.

Samuel G. Allen, "a resident of and domiciled in" Moore County, North Carolina, died testate on October 16, 1956. His will was probated and filed in Moore County. As stated in appellee's brief: "His widow, Emily Myers Allen of Pinehurst, North Carolina, and his nephew, Bertram S. Allen, of Greenwich, Connecticut, were named as Executors of said Will and duly qualified as such before the Clerk of the Superior Court of Moore County." They qualified on October 27, 1956.

On December 17, 1956, plaintiff, for the estate of Samuel G. Allen, filed a "Tentative Return" as of December 31, 1956, listing "Shares of Stock" of the net taxable value of $5,500,000.00, and paid "Estimated Tax" (25¢ per $100.00) of $13,750.00. On March 22, 1957, she filed a final return as of December 31, 1956, listing (1) "Money on Deposit Other than in N. C. Banks, including Certificates of Deposit, etc., or Postal Savings in and out of N. C." of the net taxable amount of $139,181.89, the tax thereon, at 10¢ per $100.00, being $139.18; (2) "Notes, Bonds and Other Evidences of Debt" of the net taxable amount of $73,750.00, the tax thereon, at 25¢ per $100.00, being $184.38; and (3) "Shares of Stock" of the net taxable amount of $5,441,059.50, the tax thereon, at 25¢ per $100.00, being $13,602.65. The total tax, according to said final return, was $13,926.21. Deducting from $13,926.21 the $13,750.00 paid on December 17, 1956, plaintiff then paid the balance of $176.21.

The item of $139,181.89 listed on said final return is shown as the "Average of Total Quarterly Deposit Balances," to wit, deposit balances at close of business February 15, 1956 — $199,401.25, at close of business May 15, 1956 — $186,862.04, at close of business August 15, 1956 — $91,661.58, at close of business November 15, 1956 — $78,802.68.

On December 17, 1957, plaintiff, for the estate of Samuel G. Allen, filed a "Tentative Return" as of December 31, 1957, listing (1) "Money on Deposit Other than in N. C. Banks, etc." of the net taxable amount of $50,000.00 (tax — $50.00), (2) "Notes, Bonds and Other Evidences of Debt," of the net taxable amount of $60,000.00 (tax — $150.00), (3) "Shares of Stock," of the net taxable amount of $2,-940,000.00 (tax — $7,350.00), and paid the "Estimated Tax" of $7,550.00. On April 5, 1958, she filed a final return as of December 31, 1957, listing (1) "Money on Deposit Other than in N. C. Banks, etc." of the net taxable amount of $39,972.00, the tax thereon, at 10¢ per $100.00, being $39.97; (2) "Notes, Bonds and Other Evidences of Debt" of the net taxable amount of $70,250.00, the tax thereon, at 25¢ per $100.00, being $175.63; and (3) "Shares of Stock" of the net taxable amount of $3,325,152.96, the tax thereon, at 25¢ per $100.00, being $8,312.88. The total tax, according to said final return, was $8,528.48. Deducting from $8,528.48 the $7,550.00 paid on December 17, 1957, plaintiff paid the balance of $978.48.

The item of $39,972.00 listed on said final return is shown as the "Average of Total Quarterly Deposit Balances," to wit, deposit balances at close of business February 15, 1957 — $48,802.68, at close of business May 15, 1957 — $48,802.68, at close of business August

15, 1957 — $43,529.47, at close of business November 15, 1957 — $18,753.18.

On May 23, 1959, plaintiff demanded a refund of $10,444.65, being three-fourths of the $13,926.21 she had paid on account of intangibles held by the executors on December 31, 1956, and a refund of $6,396.36, being three-fourths of the $8,528.48 she had paid on account of intangibles held by the executors on December 31, 1957. These demands were based on the assertion that three-fourths of the gross adjusted estate of Samuel G. Allen, under the terms of his will, vested in and was distributable to nonresidents, and that the income received by the executors subsequent to the death of Samuel G. Allen (October 16, 1956) had been so distributed. Plaintiff based her asserted right to these refunds on the provisions of G.S. 105-212.

Defendant denied plaintiff's said demands. Thereupon, plaintiff, in apt time, instituted this action.

The hearing was on the pleadings, including exhibits attached to and made a part of the complaint. Defendant, by answer, admitted plaintiff's factual allegations.

The court, being of the opinion that plaintiff was a fiduciary within the meaning of G.S. 105-212 and entitled to the exemption provided therein, adjudged that plaintiff recover the amount of the refunds demanded, a total of $16,841.01, plus interest and costs.

Defendant excepted to the judgment, and to designated conclusions of law stated therein, and appealed.

*John D. McConnell for plaintiff, appellee.*
*Attorney General Bruton and Assistant Attorneys General Abbott and Pullen for defendant, appellant.*

BOBBITT, J. G.S. 105-212, in pertinent part, provides:

"If any intangible personal property held or controlled by a fiduciary domiciled in this State is so held or controlled for the benefit of a nonresident or nonresidents, or for the benefit of any organization exempt under this section from the tax imposed by this article, such intangible personal property shall be partially or wholly exempt from taxation under the provisions of this article in the ratio which the net income distributed or distributable to such nonresident, nonresidents or organization, derived from such intangible personal property during the calendar year for which the taxes levied by this article are imposed, bears to the entire net income derived from such intangible personal property during such calendar year. 'Net income' shall be deemed to have the same meaning that it has in the income tax

article. Where the intangible personal property for which this exemption is claimed is held or controlled with other property as a unit, allocation of appropriate deductions from gross income shall be made to that part of the entire gross income which is derived from the intangible personal property by direct method to the extent practicable; and otherwise by such other method as the Commissioner of Revenue shall find to be reasonable: Provided, that each fiduciary claiming the exemption provided in this paragraph shall, upon the request of the Commissioner of Revenue, establish in writing its claim to such exemption. No provision of law shall be construed as exempting trust funds or trust property from the taxes levied by this article except in the specific cases covered by this section."

The agreed case on appeal contains this stipulation:

"It is hereby stipulated by the parties to this action that all income received by the Executors of the Estate of Samuel G. Allen, during the administration of the same during the years 1956 and 1957 has been paid to the legatees in the ratio of one-fourth to Mrs. Emily Myers Allen of Pinehurst, North Carolina, and three-fourths to the residuary legatees under the Will of Samuel G. Allen, all of whom are non-residents of North Carolina.

"It is further stipulated that no income was distributed during the year 1956; and that $200,000.00 was distributed during the year 1957, $50,000.00 to Mrs. Emily Myers Allen, and $150,000.00 to the residuary non-resident legatees; and that the remaining income earned during the years 1956 and 1957 has been subsequently divided one-fourth to Mrs. Emily Myers Allen of Pinehurst, North Carolina, and three-fourths to the residuary non-resident legatees."

The question is whether the executors, in respect of intangible personal property held and controlled by them on December 31, 1956, and on December 31, 1957, respectively, are entitled to the refunds demanded. On these dates, the estate was in process of administration. As of now, there has been no final settlement.

Unquestionably, as plaintiff contends, an executor acts in a fiduciary capacity. *In re Will of Covington*, 252 N.C. 551, 114 S.E. 2d 261; *McMichael v. Proctor*, 243 N.C. 479, 91 S.E. 2d 231. In G.S. 36-9, they are classified with "guardians, trustees, and other fiduciaries ..." They are expressly included in statutory definitions of "fiduciary." G.S. 32-2; G.S. 105-163.1(8). An executor's fiduciary obligation is to pay the decedent's debts as provided by law and to administer

the estate in compliance with the provisions of the decedent's will. *McGehee v. McGehee*, 190 N.C. 476, 130 S.E. 115; *Scott v. Jordan*, 235 N.C. 244, 250, 69 S.E. 2d 557.

The status of an executor is well stated in 21 Am. Jur., Executors and Administrators § 8, as follows: "While a personal representative of a decedent stands in the place of, and is regarded as, the representative of the deceased person for the purpose of settling his business affairs and distributing his estate, in reality he serves in a dual capacity, occupying also the position of trustee for the persons beneficially interested in the estate. Such persons are generally the creditors and the heirs of the decedent, those designated in the will as legatees or devisees, and, in the default of beneficiaries taking under the will, those entitled to the estate under the statute of distributions. After all claims have been paid, the representative remains as a trustee for the beneficiaries of the estate."

The personal property of the testator vests upon his death in his executor. *Darden v. Boyette*, 247 N.C. 26, 31, 100 S.E. 2d 359; *Sales Co. v. Weston*, 245 N.C. 621, 627, 97 S.E. 2d 267. "Although title to the personal property of a decedent vests in his executor or administrator, he takes such personal property in trust for the payment of the debts of the decedent and the distribution of the remainder among his next of kin, in accordance with the provisions of the will or the law. . . . For the time being the personal representative succeeds to all the rights and responsibilities of the decedent with reference thereto and represents the decedent with respect to such property." 21 Am. Jur., Executors and Administrators § 283.

G.S. 28-162 provides that an executor, immediately after the expiration of two years from his qualification, shall divide, deliver and pay to the persons entitled thereto under the will all of the estate remaining after payment of legal debts, charges and disbursements.

In the light of these well-established legal principles, it is appropriate to consider the provisions of the will. Summarized, they are as follows:

The testator gives, devises and bequeaths to his wife, Emily Myers Allen, such portion of all his property and estate, real, personal and mixed, whatsoever and wheresoever, "as will amount to one-fourth (1/4) of my adjusted gross estate as defined in Section 2056 of the Internal Revenue Code"; and, in addition thereto, he bequeaths and devises to his wife, in fee simple and absolutely, certain described real estate and tangible personal property. He then gives and bequeaths to various legatees specific monetary bequests aggregating $230,000.00. He directs his executors to pay out of the residue of his

estate "any and all Federal or State estate, inheritance or other tax that may be payable on or on account of any of my property and estate," so that "each devise and/or bequest . . . shall be received by the beneficiary free from the payment of, or any deduction for or on account of, any such tax."

In respect of all the rest, residue and remainder of his property and estate, real, personal and mixed, whatsoever and wheresoever, after payment of all taxes as theretofore provided, the testator orders and directs that his executors divide such residue into ten equal portions. Thereupon, he gives and bequeaths a specified number of these ten equal portions to each of six relatives, all of whom are nonresidents of North Carolina.

The testator confers upon his executors plenary powers, set forth in detail, with reference to the handling of the assets of his estate, including the right "(t)o sell, convert into cash and dispose of, at such time or times as my said Executors will determine, any of the investments and other property held by them, publicly or privately, at such price or prices and upon such terms and conditions as to them may seem satisfactory."

No *specific* property, tangible or intangible, was bequeathed or devised to any of said nonresident beneficiaries.

G.S. 105-206 provides: "Every person, firm, association, corporation, clerk of court, guardian, trustee, executor, administrator, receiver, asignee for creditors, trustee in bankruptcy or other fiduciary owning or holding any intangible personal properties defined and classified and/or liable for or required to pay any tax levied, in this article or schedule, either as principal or agent, shall make and deliver to the Commissioner of Revenue in such form as he may prescribe a full, accurate and complete return of such tax liability; such return, together with the local amount of tax due, shall be filed on or before the fifteenth day of April in each year."

In respect of the return filed as of December 31, 1956, the net taxable amount of money on deposit in banks other than N. C. banks is the average of four amounts, three of which were bank balances on dates prior to the death of the testator.

It will be noted that the net taxable amount of intangibles listed as of December 31, 1956, is substantially greater than the net amount of intangibles listed as of December 31, 1957. The clear inference is that the executors found it necessary to use a substantial portion of the intangibles held by them on December 31, 1956, in the payment of taxes, specific bequests, etc. Indeed, the complaint alleges that the executors paid the specific bequests in the amount of $230,000.00 pursuant to an order entered January 14, 1957, by the

Clerk of the Superior Court of Moore County. Moreover, the differences between the intangibles listed on the tentative returns and on the final returns indicate frequent changes from time to time in the identity of the intangibles held by the executors.

The conclusion is inescapable that the executors did not, as of December 31, 1956, and as of December 31, 1957, hold or control any *specific* property, tangible or intangible, for the benefit of nonresidents. While the estate was in process of administration, the executors held and controlled all assets of the estate for disbursement and distribution according to law and the provisions of the will without distinction as to the kind and character of the assets to be distributed to the widow or to the nonresident residuary beneficiaries upon final settlement. In short, the assets were in the hands of the executors in their capacity as the testator's personal representatives. In this connection, it is noteworthy that the testator conferred upon his executors the power "(t)o make payment or distribution in kind or in cash, or partly in kind and partly in cash, the valuations of securities or other property delivered in making payment or distribution to be fixed by my said Executors."

We have not overlooked the stipulation as to the distribution by the executors of income received subsequent to the testator's death. The will makes no provision for the distribution of income while the estate is in process of administration. Incidentally, the record does not disclose the source of the income so received and distributed. Whether the executors had legal authority to distribute such income is not before us. Ordinarily, distribution of assets or of income prior to final settlement is made by an executor at his own risk. *Mallard v. Patterson,* 108 N.C. 255, 13 S.E. 93.

Appellee cites *Trust Co. v. Jones,* 210 N.C. 339, 186 S.E. 335; *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17; and *Trust Co. v. Grubb,* 233 N.C. 22, 62 S.E. 2d 719, all relating to testamentary trusts. These decisions are authority for the proposition that, where the assets of a testamentary trust consist of the residue of the testator's estate and the will does not otherwise provide, the amount of the income received by the executor during the period of administration is to be disbursed by the trustee to the life (income) beneficiaries of the trust and not added to the corpus of the trust estate. Suffice to say, the present case presents a different legal problem.

The ultimate question is whether the exemption provided in the quoted portion of G.S. 105-212 is available to plaintiff. This provision was incorporated in G.S. 105-212 in 1947. Session Laws 1947, c. 501, s. 7. It exempts intangible personal property held or con-

trolled for the benefit of a nonresident or nonresidents by "a fiduciary *domiciled in this State.*" (Our italics)

In our view, the intent and purpose of the 1947 amendment was not to exempt any intangibles theretofore subject to the intangible personal property tax but to dispel any idea that intangibles otherwise exempt would be subject to the intangible personal property tax *because* a fiduciary domiciled in this State held and controlled such intangibles. Under its provisions, a resident or nonresident creator of a trust, consisting wholly or in part of intangibles, can name as fiduciary a person, bank or trust company domiciled in North Carolina with the assurance that the interests of nonresident beneficiaries of the trust will not suffer on account thereof. Moreover, we think the 1947 amendment was intended to apply to an established or continuing trust, not to intangibles constituting general assets of an estate in process of administration. In this connection, it is noted (1) that the will does not establish a testamentary trust, and (2) that there is no legacy of specific intangible personal property to any beneficiary.

The exemption, if applicable at all to an estate in process of administration by an executor, is applicable only if such executor is domiciled in this State. A nonresident may qualify as executor by giving bond. G.S. 28-34; G.S. 28-35. He is not required to give bond if a resident qualifies as coexecutor. G.S. 28-38. Manifestly, the General Assembly did not intend the exemption should apply when the executor is a resident, or when a coexecutor is a resident, but not when a sole executor is a nonresident. This fortifies our view that the exemption was not intended to apply, and does not apply, to intangibles constituting general assets held and controlled by an executor of an estate during the process of administration.

In the factual situation presented on this appeal, we are of opinion, and so hold, that plaintiff is not entitled to the exemption provided in the quoted portion of G.S. 105-212. Hence, the judgment of the court below is reversed.

Reversed.