KATHLEEN BRYSON MOORE AND HUSBAND, J. MEREDITH MOORE
v. T. D. BRYSON, JR., AND WIFE, CAROLYN F. BRYSON; LILLIAN
BRYSON MARTIN AND HUSBAND, JOHN W. MARTIN; ELIZA-
BETH BRYSON STONE AND HUSBAND, JOHN W. STONE; MARION
BRYSON ENGLISH AND HUSBAND, WALTER T. ENGLISH; E. C.
BRYSON AND WIFE, ANNE BRYSON

No. 7130SC179

(Filed 26 May 1971)

**1. Rules of Civil Procedure § 56— summary judgment — nature of the remedy**

Summary judgment is an extreme remedy and should be cauti-
ously invoked to the end that parties will always be afforded a trial
where there is a genuine issue of facts between them.

**2. Rules of Civil Procedure § 56— summary judgment — basis for the remedy**

Summary judgment is proper only when the pleadings, deposi-
tions, answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to any
material fact and that any party is entitled to judgment as a matter
of law. G.S. 1A-1, Rule 56(c).

**3. Rules of Civil Procedure § 56— summary judgment — burden of proof**

Upon motion for summary judgment the burden is on the moving
party to establish the lack of a triable issue of fact.

**4. Fiduciaries; Tenants in Common § 6— cotenant's purchase of property adjoining the common property — breach of fiduciary duty — question of fact**

A question of fact existed as to whether a tenant in common,
who was also executor of the testator who devised the common prop-
erty, occupied a fiduciary relationship with cotenants in com-
mon at the time when he individually purchased the testator's homeplace
which adjoined the common property, and as to whether the homeplace
was so vitally connected with the common property as to render his
purchase a breach of his fiduciary relationship with his fellow co-
tenants, especially where there was evidence that the tenant learned
through his position as executor that the homeplace was for sale;
consequently, the trial court improperly granted the tenant's motion
for summary judgment.

**5. Fiduciaries; Executors and Administrators § 9— executor as fiduciary**

An executor acts in a fiduciary capacity. G.S. 32-2(a).

**6. Tenants in Common § 3— creation of fiduciary relationship between cotenants**

A fiduciary relationship may arise between tenants in common as
a result of their conduct.

Moore v. Bryson

7. Fiduciaries — acquisition of title adverse to cestuis

A fiduciary who acquires an outstanding title adverse to his *cestuis que trustent* is considered in equity as having acquired it for their benefit.

8. Fiduciaries — conflict of interest

A person occupying a place of trust and confidence may not place himself in a position where his own interest may conflict with the interest of those for whom he acts.

Judge BRITT dissenting.

APPEAL by petitioners from *Snepp, Judge*, 21 October 1970 Session of SWAIN County Superior Court.

Daniel Rice Bryson died 22 December 1955, leaving a will which has been probated and recorded in the office of the clerk of court of Swain County. In Item III of the will he devised "[t]o my niece, Edith B. Franklin . . . the house and lot where I live." Item III further provided that the remainder of Bryson's property be divided among his nephews T. D. Bryson, Jr. and E. C. Bryson and his nieces Kathleen Bryson Moore, Lillian Bryson Martin, Betsy Bryson Stone and Marion Bryson Singleton (now Marion Bryson English). All beneficiaries under this item in the will are brothers and sisters.

The house and lot (homeplace) devised to Edith Franklin fronts on Everett Street in Bryson City. Included in the residuary estate is 12 acres of "bottom land" adjoining and lying immediately to the rear of the homeplace. This tract has no access to Everett Street, except through the homeplace property.

In petition for partition, filed 19 January 1970, petitioners allege: E. C. Bryson purchased the homeplace and took title in his individual name while acting in a fiduciary capacity to Mrs. Moore and other co-owners of the 12-acre tract; that by virtue of his fiduciary obligations he holds the homeplace in trust for all the tenants in common of the 12-acre tract, subject to a charge for the amount of funds used in the purchase. The petition asks that the 12 acres of bottom land and the homeplace be sold as a single tract, and after the payment of costs, that the proceeds be distributed among the parties as their interests may appear.

E. C. Bryson and wife filed an answer in which Mr. Bryson alleges that for consideration in the amount of $10,000, he acquired title to the homeplace by deed, dated 16 May 1962, and

that by virtue of the deed he owns the property in fee simple. All other respondents filed answer denying any interest in the homeplace.

On 2 October 1970, E. C. Bryson filed motion requesting summary judgment "to the extent that the Court declare as a matter of law that this defendant is the owner of that tract of land referred to in paragraph 3 of the Petition as 'the old D. R. Bryson homeplace' . . . and that said tract be eliminated from this proceeding."

On 16 October 1970 petitioners filed motion for summary judgment requesting the court to declare as a matter of law that the homeplace is held in trust by E. C. Bryson for himself and the other cotenants of the remainder interest in the D. R. Bryson estate, subject to a charge for the amount of personal funds used by Bryson in purchasing the property. The motions came on for hearing before Judge Snepp. Petitioners' motion was denied and the motion of E. C. Bryson was allowed. Petitioners appealed.

*Clark and Tanner by David M. Clark for petitioner appellants.*

*J. Francis Paschal and E. C. Bryson, Jr., for defendant appellee.*

GRAHAM, Judge.

[1-3] Summary judgment is an extreme remedy and should be cautiously invoked to the end that parties will always be afforded a trial where there is a genuine dispute of facts between them. *United Meat Co. v. Reconstruction Finance Corp.,* 174 F. 2d 528 (D.C. Cir. 1949). It is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). " 'Upon a motion for summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried.' *Toebelman v. Missouri-Kansas Pipe Line Co.,* 130 F. 2d 1016 (3rd Cir. 1942)." *Lee v. Shor,* 10 N.C. App. 231, 178 S.E. 2d 101. The burden is on the moving party to establish the lack of a triable issue of fact. *Pridgen v. Hughes,* 9 N.C. App. 635, 177 S.E. 2d 425.

[4] We think it clear that the court properly overruled petitioners' motion for summary judgment. A more difficult question arises as to whether the motion for summary judgment, made by respondent E. C. Bryson, was properly allowed. The effect of granting this motion was to hold that a consideration of the pleadings and affidavits shows that no question of fact exists as to whether E. C. Bryson occupied a fiduciary relationship with Mrs. Moore and other cotenant owners of the 12 acres of bottom land at the time he purchased the Bryson homeplace; and if he did occupy such a relationship, whether the homeplace property was so vitally connected with the 12-acre tract as to render it improper for E. C. Bryson to purchase it for himself. We are of the opinion that facts contained in petitioners' affidavits raise jury questions as to each of these issues.

It is undisputed that on 27 December 1955, E. C. Bryson qualified as an executor of his uncle's estate and that to this day no final accounting has been filed. In fact, a recent effort by petitioners to force an accounting was successfully resisted by E. C. Bryson and his co-executor as being barred by the statute of limitations. (See *Moore v. Bryson*, 11 N.C. App. 149). E. C. Bryson contends, however, that his duties as an executor did not extend in any way to the 12-acre tract of real estate and could not render him a fiduciary with respect to this property. Ordinarily this would be quite true, for real estate normally is not considered a part of an estate to be administered by an executor, unless the personal estate is insufficient to discharge debts. G.S. 28-148; *Pearson v. Pearson*, 227 N.C. 31, 40 S.E. 2d 477.

Here, however, if affidavits filed by petitioners were found to be true and accurate, an inference that E. C. Bryson dealt with the 12-acre tract as if it were included within his administrative responsibilities as executor would be raised. For instance, taxes on the property accruing subsequent to the testator's death were paid by the executors from estate funds. E. C. Bryson, on behalf of all the owners, negotiated with the Southern Railroad for the purchase of a strip of land intersecting the 12-acre tract—in order to improve the tract's value. It would also appear that the executors negotiated a sale of a portion of the 12-acre tract to the State Highway Commission, received the proceeds from the sale, and disbursed the proceeds in accordance with their own judgment. This is illustrated by a letter, dated 22 October 1968, from E. C. Bryson to Mrs. Moore:

"Following receipt of your letter yesterday I called T. D. and suggested that he pay all taxes in both the D. R. Bryson property and the T. D. Bryson property and the [*sic*] divide the balance in six equal parts and send the checks to me and I would distribute them. I am talking now about the money received from the State. Actually there are no other funds anyway."

A later letter indicates that E. C. Bryson's suggestion was followed by his co-executor, though plaintiff contends the interest of the owners of the T. D. Bryson property was not identical to the interest of the owners of the 12-acre tract.

An affidavit of Edith B. Franklin permits an inference that it was because of E. C. Bryson's position as executor that he was made aware of her interest in selling the Bryson homeplace. She states that Mr. V. L. Cope, who had been renting the 12 acres of bottom land, inquired about purchasing the Bryson homeplace. Her affidavit continues: "I did not wish to do anything underhanded about it, so I informed my brother, E. C. Bryson, one of the Executors of the Estate, who lived in Durham, that I was seriously considering selling the place; my brother E. C. Bryson, then called me immediately and asked would I sell to him. . . ." Her affidavit also tends to show that E. C. Bryson recognized the value of the homeplace to the 12-acre tract and at one time contended that a portion thereof was included within that tract. Paragraph 4 of Mrs. Franklin's affidavit provides in part:

"4. That my brothers, E. C. Bryson and T. D. Bryson, Jr., qualified as Executors of the Will of D. R. Bryson shortly after his death; that said Executors recognized from the outset that without access to Everett Street the value of the bottom land of the D. R. Bryson Estate was greatly diminished, and they initially took the position that the devise to me had included only the narrow strip on which the house rested and did not include the portion of the homeplace on which the maid's quarters rested . . . that in light of this controversy, I enlisted the assistance of my uncle, S. W. Black, Esq., of Bryson City, North Carolina, who had practiced law with my father, T. D. Bryson, before he became a superior court judge; that Mr. Black checked the records at the Courthouse for me which demonstrated that the house and lot was on an L-shaped lot; that after

S. W. Black demonstrated this, my brothers apparently abandoned the position that the entire L-shaped lot did not belong to me."

The trial court, though granting Mr. Bryson's motion for summary judgment, nevertheless found that he had generally acted as agent for his cotenants in the management of the 12-acre tract. These findings are as follows:

"9. After qualifying as Executors under the Will of Daniel Rice Bryson, the defendant, E. C. Bryson, together with the defendant, T. D. Bryson, Jr., generally attended to the payment of taxes on the property devised under the Residuary Clause of the Will; negotiated with the State Highway Commission for a right-of-way over the property; made inquiries as to the possible purchase of adjoining property; on occasions, advised with their co-tenants as to the matters affecting the common property, and, in general, acted as agents for their tenants-in-common in the management of the property devised under the Residuary Clause of the Will of Daniel Rice Bryson."

[4-6]  An executor acts in a fiduciary capacity. G.S. 32-2(a); *Allen v. Currie, Commissioner of Revenue,* 254 N.C. 636, 119 S.E. 2d 917; *In re Will of Covington,* 252 N.C. 551, 114 S.E. 2d 261; *McMichael v. Proctor,* 243 N.C. 479, 91 S.E. 2d 231. Also, while a fiduciary relationship ordinarily does not arise between tenants in common from the simple fact of their cotenancy, such a relationship may be created by their conduct, "as where one cotenant assumes to act for the benefit of his cotenants." 86 C.J.S., Tenancy in Common, § 17, p. 377. Furthermore, it is not necessary that there be a technical or legal relationship for a fiduciary relationship to exist. 36A C.J.S., Fiduciary, p. 387. "[T]he relationship exists where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and in due regard to the one reposing confidence." 4 Strong, N. C. Index 2d, Fiduciaries, p. 17, and cases therein cited. Thus, if as an executor under the will of his uncle, as a cotenant, or simply as an individual, E. C. Bryson undertook to manage and generally control the 12-acre tract for the benefit of his co-owners, causing them to respose special faith, confidence and trust in him to represent their best interest with respect to the property, he occupied a fiduciary relationship to them. Under the facts heretofore set out, we hold that this is a triable issue.

A question remains as to whether E. C. Bryson's purchase of the homeplace, while acting as a fiduciary with respect to the 12-acre tract, constituted such a breach of his fiduciary relationship as to require in equity that the purchase be regarded as having been made for the benefit of all of the owners of the 12-acre tract. We hold this also to be a triable issue, the answer depending upon the relationship which the homeplace had to the 12-acre tract. If, at the time the homeplace was purchased by E. C. Bryson, it was so connected or related to the 12-acre tract as to vitally affect the value of the 12-acre tract, the answer would be in the affirmative.

A tenant in common may unquestionably purchase for his own use adjoining property which does not affect the value or use of the property commonly held. *Woodlief v. Woodlief,* 136 N.C. 133, 48 S.E. 583; *Brickell v. Earley,* 115 Pa. 473, 8 A. 623. Here, however, petitioners' affidavits tend to show that at the time E. C. Bryson purchased the homeplace, the 12-acre tract was completely landlocked. Its value was particularly dependent on whether access to a public street could be obtained through the homeplace property which separates the tract from a main street in Bryson City. Conceivably, whether the 12-acre tract is of substantial value or virtually worthless may turn upon the success of the owners in acquiring the homeplace or a right of way over it. Now, Mrs. Moore and other owners are placed in the position of having to deal with the very person they entrusted with the management of their property with respect to this matter.

[7] It may be argued that petitioners are no worse off than if Edith B. Franklin, rather than E. C. Bryson, retained ownership to the homeplace. A similar argument could be advanced if E. C. Bryson had purchased from a third party and for his own benefit a mortgage or adverse claim affecting the property. Yet, it is well established that a fiduciary who acquires an outstanding title adverse to his *cestuis que trustent* is considered in equity as having acquired it for their benefit. *Pearson v. Pearson, supra; Haskill v. Freeman,* 60 N.C. 585; *Brantly v. Kee,* 58 N.C. (5 Jones Eq.) 332. Also, " '[i]f one of several tenants in common should buy in an outstanding title affecting the common property, equity will declare him to have purchased for the benefit of the others.' " *Gentry v. Gentry,* 187 N.C. 29, 121 S.E. 188, and cases therein cited. "The foundation of the doctrine which disables a cotenant from asserting an adverse title against

---

Moore v. Bryson

---

the other cotenants is that, while the relation continues, there is a community of interest which gives rise to a community of duty, and creates a relation of trust and confidence, which disables each cotenant from doing anything which would prejudice the others in reference to the common property." 4 Thompson on Real Property, § 1802, p. 141.

[8] A person occupying a place of trust and confidence may not place himself in a position where his own interest may conflict with the interest of those for whom he acts. "[F]iduciaries must act in good faith. They can never paramount their personal interest over the interest of those for whom they have assumed to act." *Miller v. McLean*, 252 N.C. 171, 113 S.E. 2d 359.

The portion of the trial court's order which denies petitioners' motion for summary judgment is affirmed.

The portion of the court's order which allows respondent E. C. Bryson's motion for summary judgment is reversed.

Affirmed in part and reversed in part.

Judge CAMPBELL concurs.

Judge BRITT dissents.

Judge BRITT dissenting:

The effect of the majority opinion is to say that if at trial petitioner offers competent evidence commensurate with her showing at the hearing on the motions for summary judgment, she would be entitled to go to the jury on her contention that E. C. Bryson holds the D. R. Bryson homeplace in trust for the benefit of petitioner and other tenants in common of the 12 acre tract. I respectfully disagree.

At the hearing, the following undisputed facts were shown: Petitioner and her cotenants regarded the homeplace as a parcel of land completely separate and apart from the 12 acre tract. In November 1958, petitioner recommended "that Edith be given a deed and title to her portion of Uncle Doc's estate." On 6 May 1961, petitioner and the other tenants in common (together with their spouses) executed a deed for the homeplace to Mrs. Franklin describing the same by courses and distances. Thereafter, a Mr. Cope contacted Mrs. Franklin about purchasing the home-

place; she then contacted E. C. Bryson and advised him that she was seriously considering selling the homeplace. E. C. Bryson called Mrs. Franklin immediately and inquired if she would sell to him and the price she was demanding. She agreed to sell to E. C. Bryson for $10,000 and a few days thereafter she received a check from him in the amount of $10,000 together with a deed for the property for her to execute. The deed to E. C. Bryson was executed on 16 May 1962, duly filed for registration, and the check accepted in payment for the land.

Petitioner makes no allegation or showing that she has at any time made any offer to pay E. C. Bryson any part of the purchase price which he paid Mrs. Franklin for the property; she makes no allegation or showing that at any time prior to the filing of her petition herein on 19 January 1970 that she ever claimed any interest whatsoever in the homeplace. Petitioner alleges that E. C. Bryson holds the homeplace in trust for her and the other tenants in common of the 12 acre tract; the four tenants in common, other than petitioner and E. C. Bryson, deny that they own any interest in the homeplace. Petitioner's contention that the 12 acre tract is "landlocked" and its sale value is greatly diminished by excluding the home tract is not borne out by the maps introduced by petitioner at the hearing. The maps disclose that the 12 acre tract is bordered on one end by a new highway and street; they also disclose that various other owners own considerable property between the 12 acre tract and Everett Street thereby making them prospective purchasers.

Neither party has cited nor does our research disclose any case from this jurisdiction similar to the instant case. The case of *Brickell v. Earley*, 115 Pa. 473, 8 Atl. 623 (1887) appears to be somewhat similar and in denying relief as demanded by petitioner herein, the Pennsylvania court said: "In order to sustain a proposition of this kind, the plaintiffs are bound to show that [defendant] obtained his title in fraud of their right, or that their money was used in its acquisition." The undisputed facts in the instant case do not meet this sound principle. To accept petitioner's position would impose an unreasonable duty and burden on a tenant in common.

I vote to affirm the judgment appealed from.